UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SCOTT PEASLEY,<br><br>    Plaintiff,<br><br>        v.<br><br>WARDEN M. SPEARMAN, et al.,<br><br>    Defendants. | Case No. 15-CV-1769 LHK (PR)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK**<br><br>Re: Dkt. Nos. 90, 115, 123 |

Plaintiff, a California prisoner proceeding *pro se*, has filed an amended civil rights complaint, pursuant to 42 U.S.C. § 1983. In the amended complaint, plaintiff alleges that defendants were deliberately indifferent to his serious medical needs by failing to adequately treat his Type-I diabetes. Defendants Warden Spearman, Chief Medical Officer Ellis, Dr. Bright, Officer Orozco, Officer Gibson, and Dr. Ahmed have filed a motion to dismiss based on res judicata, and a motion for summary judgment.[1] Plaintiff has filed motions for summary judgment, and a motion to amend his amended complaint to include third parties. For the reasons stated

---

[1] Defendant Officer Maria L. Lopez has not entered an appearance in this case.

below, defendants' motion to dismiss is denied, and defendants' motion for summary judgment is granted. The court refers the case to settlement proceedings, and stays the case.

## BACKGROUND

Plaintiff suffers from Type-I diabetes, which means that plaintiff cannot produce insulin. Thus, according to plaintiff, he needs two types of insulin: one is used as a base to support the insulin-levels between meals, and the other is used to offset the foods that he eats. This second type of insulin is critical because it balances the food and insulin.

In the amended complaint, plaintiff generally alleges that in May 2013, Dr. Ahmed began discontinuing plaintiff's insulin and blood sugar testing plan. (Count 1.) As a result, plaintiff contracted ketoacidosis which defendants failed to treat. (Count 4.) Plaintiff also claims that defendants had a policy of denying non-formulary medications and treatments, even when recommended by a specialist. (Counts 3, 5, 11-13.) Plaintiff lists several instances when CMO Ellis, Dr. Bright, and Dr. Ahmed denied him insulin and testing or blood sugar monitoring, against the specialist's recommendations. (*Id.*) Plaintiff further claims that Dr. Ahmed refused to test or treat plaintiff's asthma until after plaintiff had suffered asthma attacks. (Count 2.) Further, plaintiff claims that Dr. Ahmed refused to inspect or treat plaintiff's feet. (Count 14.) Finally, plaintiff alleges that Officers Lopez, Gibson, and Orozco repeatedly denied plaintiff access to meals and medical care, despite knowing that plaintiff was a diabetic. (Counts 6-9.)

## MOTION TO DISMISS

Defendants moves to dismiss Counts 1, 3 through 9, and 11 through 13 as barred by res judicata.[2] Defendants argue that these counts should be dismissed because plaintiff previously raised these claims in a state habeas petition, which was denied. Plaintiff responds that the state court denied his petition on exhaustion grounds, and not on the merits. Further, plaintiff argues

---

[2] The court previously dismissed Counts 10 and 15 in its order of service.

that Counts 6 through 9 occurred after he had already filed the state habeas petition. For purposes of a res judicata analysis, a review of the claims in plaintiff's state habeas petition and plaintiff's federal amended complaint is necessary.[3]

I.     State Court Habeas Petition

On June 3, 2013, plaintiff filed his state habeas petition alleging that defendants exhibited deliberate indifference to his serious medical needs in Monterey County. Dkt. No. 92-1 ("Defs.' Req. Jud. Not.") at 2. Plaintiff alleged that, in late May 2013, Dr. Ahmed and three nurses refused to allow plaintiff to test his blood sugar. *Id.* at 4. Plaintiff claimed that he was not permitted to use fast insulin, test his blood sugar, or eat as necessary. *Id.* at 9-10. On June 17, 2013, plaintiff filed an amendment to his state habeas petition, in which he requested fast-acting insulin. Plaintiff also claimed that Dr. Ahmed told plaintiff it was "prison policy to run sugar levels higher." *Id.* at 35, 37. Two days later, plaintiff sent a letter to the state court requesting the use of a pump and a glucometer as management tools, in line with the specialist's recommendation, to manage plaintiff's diabetes. Defs.' Supp. Req. Jud. Notice at RJN 274-76. As ordered by the state court, defendant responded. On July 27, 2013, plaintiff submitted a response to defendant's response, and alleged that plaintiff was being denied food and insulin tests. Plaintiff also claims that his insulin use was being restricted, and that he needed fast-acting insulin and a blood sugar tester. *Id.* at RJN 233-45.

In September 2013, plaintiff informed the state court that on several occasions, the prison refused to administer insulin to plaintiff, and refused to test plaintiff's blood sugar level. *Id.* at RJN 187, 191. Plaintiff then filed a motion to amend his petition to include more allegations. *Id.* at RJN 183. Specifically, plaintiff alleged a nurse refused to test plaintiff's blood sugar level on September 5 and 7, 2013; and that Officer Orozco refused to allow plaintiff to get medical care or

---

[3] Defendants' request and supplemental request for judicial notice are granted.

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

3

allow him out of his cell. *Id.* at RJN 184. On September 18, 2013, plaintiff submitted a second motion to amend, and alleged that on September 6, 2013, Officer Lopez denied plaintiff access to Lassen Hall, and that Officers Gibson, Lopez, and Orozco denied plaintiff food. *Id.* at RJN 175-77. On October 31, 2013, plaintiff informed the court that Dr. Ahmed refused to treat plaintiff on October 11 and 13, 2013, even after being shown that plaintiff's insulin dosage was incorrect. *Id.* at RJN 128.

On December 30, 2013, the Superior Court issued its order denying plaintiff's petition. *Id.* at RJN 111-13. The Superior Court noted that plaintiff had alleged that medical staff was deliberately indifferent to the treatment of plaintiff's diabetes. Specifically, plaintiff alleged that he needed fast-acting insulin, more blood sugar testing, and more food. Plaintiff had also alleged that doctors had stopped giving him insulin, and stopped providing him meals at proper times. *Id.* at RJN 111. The Superior Court found that plaintiff failed to exhaust his administrative remedies, and also that plaintiff failed to demonstrate that his treatment was "medically unacceptable and chosen in conscious disregard of an excessive risk to [plaintiff's] health." *Id.* at RJN 112-13.

On January 7, 2014, plaintiff filed a motion for reconsideration. *Id.* at RJN 30-46. In that motion, plaintiff lists specific instances, from June 26, 2013 through December 10, 2013, in which the prison refused to administer insulin, refused to test plaintiff's blood sugar level, or denied plaintiff medical care. *Id.* at RJN 38-39. Plaintiff alleged in the motion that the Superior Court did not take those events into account when issuing its order denying plaintiff's petition. *Id.* Plaintiff also alleged that he was not treated for ketoacidosis. On April 3, 2014, plaintiff filed an addendum to his motion for reconsideration, in which he continued to allege that his access to medical care was being denied. *Id.* at RJN 12-14. On May 12, 2014, the Superior Court denied

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

4

plaintiff's motion for reconsideration, and concluded that plaintiff still had not exhausted his administrative remedies and that plaintiff did not meet his evidentiary burden.[4] *Id.* at RJN 9-10.

II. <u>Federal Amended Civil Rights Complaint</u>

On October 19, 2015, plaintiff filed his amended civil rights complaint alleging that defendants were deliberately indifferent to the treatment of plaintiff's diabetes. In it, plaintiff raised 15 counts. The court previously dismissed Counts 10 and 15 in its order of service. Because defendants do not argue that Counts 2 and 14 are barred by res judicata, the court will not discuss Counts 2 and 14 at this time.

In Count 1, plaintiff alleges that on May 26, 2013, Dr. Ahmed discontinued plaintiff's insulin and blood sugar testing plan. Dkt. No. 31 at 4. Because of this, plaintiff was unable to eat, and when he finally ate something, ketoacidosis was induced. *Id.* Ketoacidosis is a life-threatening condition that must be treated with fluids and insulin in a hospital. *Id.* at 47. In June 2013, plaintiff informed Dr. Ahmed that plaintiff was unable to eat, but Dr. Ahmed did nothing. *Id.* at 17. Plaintiff states that, beginning in May 2013, Dr. Ahmed, CMO Ellis, and Warden Spearman improperly discontinued insulin and blood sugar tests, disallowed urgent care and food for plaintiff, and forced plaintiff to suffer ketoacidosis. *Id.* at 19. Plaintiff acknowledges that he raised these claims in state court. *Id.* at 18.

In Count 3, plaintiff alleges that CMO Ellis and Dr. Bright were deliberately indifferent when they denied the use of fast-acting insulin because it was a non-formulary medication. *Id.* at 39-40.

In Count 4, plaintiff alleges that he was diagnosed with ketoacidosis, which resulted in his failure to eat because his lack of insulin made him fear eating. *Id.* at 43-44. Plaintiff states that

---

[4] The Superior Court also declined to address new issues regarding plaintiff's asthma and need to see a podiatrist because plaintiff raised both issues for the first time in the motion for reconsideration. *Id.* at RJN 10.

Dr. Ahmed, CMO Ellis, and Warden Spearman failed to treat him, and that they were aware of the ketoacidosis because plaintiff had discussed it in his state court papers. *Id.*

In Count 5, plaintiff claims that the prison had a policy of disallowing plaintiff from having a glucometer. *Id.* at 50-51.

In Count 6, plaintiff states that between September 6, 2013 through September 15, 2013, Officers Lopez, Gibson, and Orozco refused plaintiff's request to see a doctor for a medical emergency, and instead, restricted plaintiff to his cell despite knowing that plaintiff was a diabetic. *Id.* at 55-56. These defendants also denied plaintiff the use of a blood sugar test, the use of medication, and refused to allow plaintiff out of his cell to receive medical aid. *Id.* at 58.

In Count 7, plaintiff alleged that on July 14, 2013, Officer Orozco denied plaintiff access to a meal after plaintiff received his insulin injection. Dkt. No. 31-1 at 6, 8.

In Counts 8 and 9, plaintiff alleged that on September 16, 2013, and November 4, 2013, Officer Lopez denied plaintiff access to a meal after plaintiff received his insulin injection. *Id.* at 10-12, 14-16.

In Count 11, plaintiff alleged that in April 2015, CMO Ellis and Dr. Bright denied plaintiff insulin treatment, contrary to a specialist's recommendation and Dr. Ahmed's request for the same. *Id.* at 32-35. In Count 12, plaintiff alleged that in April 2015, Dr. Ahmed, CMO Ellis, and Dr. Bright denied blood sugar monitoring because it was non-formulary. *Id.* at 45-46. In Count 13, plaintiff alleged that in April 2015, Dr. Ahmed, CMO Ellis, and Dr. Bright effectively denied plaintiff the ability to eat regular meals because plaintiff was unable to properly monitor and manage his blood sugar levels. *Id.* at 51-52.

III.  Analysis

Under the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect as the state court judgment would receive by

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

6

another court of that state. *See* 28 U.S.C. § 1738; *Maldonado v. Harris*, 370 F.3d 945, 951 (9th Cir. 2004). The United States Supreme Court has made it clear that a Section 1983 claim brought in federal court is subject to principles of issue and claim preclusion by a prior state court judgment. *See Gonzales v. California Dep't. of Corr.*, 739 F.3d 1226, 1231 (9th Cir. 2014) (holding that "reasoned denials of California habeas petitions" have claim-preclusive effect on subsequent civil litigation); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981) ("we hold that because of the nature of a state habeas proceeding, a decision actually rendered should preclude an identical issue from being relitigated in a subsequent § 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards."). This means that California's claim preclusion law governs whether plaintiff's Section 1983 claims may be brought in federal court. *Furnace v. Giurbino*, 838 F.3d 1019, 1023 (9th Cir. 2016).

The doctrine of res judicata, or claim preclusion, "'bars all grounds for recovery which could have been asserted, whether they were or not, in a prior suit between the same parties . . . on the same cause of action.'" *C.D. Anderson & Co., Inc. v. Lemos*, 832 F.2d 1097, 1100 (9th Cir. 1987) (citing *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986)). In California, "[c]laim preclusion arises if a second suit involves: (1) the same cause of action (2) between the same parties [or parties in privity with them] (3) after a final judgment on the merits in the first suit." *Furnace*, 838 F.3d at 1023-24.

Here, even assuming that the federal suit involved the same cause of action as the state habeas case, and that both the federal and state cases were between the same parties (or parties in privity), the court finds that there was not a final judgment on the merits in the first suit.

The Ninth Circuit has held that where the earlier judgment contains two alternative holdings, one that rests on lack of jurisdiction and one that rests on a merits determination, the

earlier judgment is not res judicata because it was not "on the merits." *Ruiz v. Snohomish Cty. PUD*, 824 F.3d 1161, 1164 (9th Cir. 2016). This is because lack of personal jurisdiction deprives the court of authority to rule on the merits. *Id.*

In *Ruiz*, a former county employee filed in state court a suit alleging sexual discrimination against her employer. The case was subsequently removed to federal court. Because the plaintiff failed to effect service on the defendant, the federal court dismissed the case with prejudice based on lack of personal jurisdiction, and also on timeliness grounds. The plaintiff then filed in state court a second case alleging sexual discrimination under federal and state law against her employer. *Id.* at 1162. The case was removed to federal court, and the district court held that the plaintiff's action was barred by res judicata and dismissed the case. On appeal, the Ninth Circuit reversed. As a matter of first impression, the Ninth Circuit held "that res judicata does not apply to a judgment that rests on both a lack of jurisdiction and a merits determination." *Id.* at 1165.

In *Ruiz*, the Ninth Circuit declined to adopt a general rule "for all judgments resting on alternative grounds where one alternative is not on the merits." *Id.* at 1165. However, it agreed with the Sixth and Seventh Circuits that "when one alternative ground for dismissal is jurisdictional, the original judgment is not res judicata regardless of other circumstances. *See Remus Joint Venture v. McAnally*, 116 F.3d 180, 184 n.5 (6th Cir. 1997) ("[T]he state court correctly recognized that when a district court's ruling rests on alternative grounds, at least one of which is based on the inability of the court to reach the merits, the judgment should not act as a bar in a future action."); *Bunker Ramo Corp. v. United Bus. Forms, Inc.*, 713 F.2d 1272, 1279 (7th Cir. 1983) ("Once a court expresses the view that it lacks jurisdiction, the court thereafter does not have the power to rule on any other matter. Any finding made by a court when the court has determined that it does not have subject matter jurisdiction carries no res judicata consequences." (citations omitted)); *see also* 18 Federal Practice § 4421, at 575-78 ("If a first decision is

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

8

supported both by findings that deny the power of the court to decide the case on the merits and by findings that go to the merits, preclusion is inappropriate as to the findings on the merits. A court that admits its own lack of power to decide should not undertake to bind a court that does have power to decide." (footnote omitted))." *Id.* at 1165-66 (footnotes omitted).

Here, the state court denied plaintiff's state habeas petition based on nonexhaustion as well as on the merits. In California, a prisoner's failure to exhaust administrative remedies is a jurisdictional requirement.[5] *See Wright v. State*, 122 Cal. App. 4th 659, 665-66 (2004). Thus, applying *Ruiz*, the state court's denial of plaintiff's state habeas petition based on both a jurisdictional requirement and on the merits does not have a preclusive effect on the underlying case. *See, e.g.*, *Melendez v. Hunt*, No. 13-cv-00279 AWI-BAM (PC), 2016 WL 5156469, at *7-*8 (E.D. Cal. Sept. 21, 2016) (concluding that, in California, the failure to exhaust administrative remedies is a jurisdictional requirement, and stating that because the state court denied plaintiff's state habeas petition based on nonexhaustion as well as on the merits, plaintiff's federal civil rights case was not barred by res judicata); *cf. Johnson v. City of Loma Linda*, 24 Cal.4th 61, 70 (2000) ("Exhaustion of *administrative* remedies is a jurisdictional prerequisite to resort to the courts."); *MIB, Inc. v. Superior Court*, 106 Cal. App. 3d 228, 232-33 (1980) ("[A] finding with respect to jurisdictional facts will be treated as res judicata in subsequent actions, although the dismissal is not res judicata on the merits of the underlying cause of action.").

Accordingly, because the state court's denial was based in part on a failure to exhaust administrative remedies, which is a jurisdictional requirement in California, the state court's

---

[5] In contrast, the federal courts have held that the exhaustion requirement is mandatory, *see Booth v. Churner*, 532 U.S. 731, 739 (2001), but not jurisdictional, *see Wyatt v. Terhune*, 315 F.3d 1108, 1117 n.9 (9th Cir. 2003), *overruled on other grounds by Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc); *Nyhuis v. Reno*, 204 F.3d 65, 69 n.4 (3d Cir. 2000) (noting that clear majority of courts have held that PLRA exhaustion is not a jurisdictional requirement).

judgment was not on the merits, and cannot serve as a basis for res judicata.[6] Defendants' motion to dismiss is DENIED.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I.    <u>Standard of review</u>

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on

---

[6] In addition, the court notes that, in the underlying federal case, plaintiff's Counts 11, 12, and 13 allege incidents that occurred after the conclusion of plaintiff's state habeas case. The state habeas case concluded when the state court denied plaintiff's motion for reconsideration on May 12, 2014. Plaintiff's federal claims in Counts 11, 12, and 13 are alleged to have occurred in April 2015. "The rule that a judgment is conclusive as to every matter that might have been litigated does not apply to new rights acquired pending the action which might have been, but which were not, required to be litigated." *Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750 F.2d 731, 739 (9th Cir. 1984). Here, because Counts 11, 12, and 13 occurred after the state court case concluded, they cannot be precluded under res judicata.

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

file, designate specific facts showing that there is a genuine issue for trial." *See id.* at 324 (internal quotations omitted).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

II.  Deliberate indifference to serious medical needs

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Insulin-dependent Type 1 diabetes is a serious medical condition for purposes of Eighth Amendment analysis. *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003). Failing to provide a person suffering from Type 1 diabetes with proper food or insulin creates a serious risk of harm. *Id.* at 419-20.

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

11

U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *Id.* at 1059. Nor does a difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment amount to deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In particular, a plaintiff's opinion that medical treatment was unduly delayed does not, without more, state a claim of deliberate indifference. *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Rather, in order to prevail on a claim based on delayed treatment, a plaintiff must show the course of treatment the doctors chose was medically unacceptable under the circumstances, such treatment was chosen in conscious disregard of an excessive risk to the plaintiff's health, and the delay resulted in harm to the plaintiff. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

III. <u>Analysis</u>

Defendants move for summary judgment on Counts 2 and 14. Plaintiff has filed an opposition, and defendants have filed a reply. The court views the facts in the light most favorable to plaintiff, the non-moving party.

A. <u>Count 2</u>

Plaintiff asserts that Dr. Ahmed refused to treat plaintiff's asthma, and directed plaintiff instead to first tell a nurse about the asthma attacks. Dkt. No. 97-1 at 9, 29. On March 3 and March 13, 2014, plaintiff submitted a health care request form complaining of asthma attacks. Dkt. No. 97-1 at 9. After having received no response, plaintiff filed a third health care request

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

United States District Court
Northern District of California

form, asking for treatment for his asthma, and complaining that he had chest pain and difficulty breathing. Dkt. No. 97-1 at 9-10, 29. On April 23, 2014, plaintiff suffered a "man down" emergency in which he was taken to triage by gurney. *Id.* at 10, 36-37. Although plaintiff had a scheduled appointment with Dr. Ahmed on April 30, 2014, Dr. Ahmed postponed the appointment to May 6, 2014. *Id.* at 11-12. According to plaintiff, Dr. Ahmed refused to treat plaintiff's asthma, and told plaintiff that Dr. Ahmed would not order an asthma test unless and until plaintiff had another "man down" episode. *Id.* at 11. Plaintiff asserts that Dr. Ahmed's refusal to order a lab test to confirm asthma and refusal to treat plaintiff's asthma constituted deliberate indifference.

Defendants submit a declaration from non-defendant, Dr. B. Barnett, who reviewed plaintiff's medical records. The records showed that in 2010 and 2012, non-defendant doctors at a different institution observed that plaintiff had very mild asthma and asthma that was "mild intermittent." Barnett Decl. ¶ 14. Plaintiff has no medical records from 2013, 2014, or 2015 which indicate that plaintiff had breathing problems, suffered from asthma attacks, or had any need for acute asthma treatment. *Id.* ¶ 21.

On April 3, 2014, plaintiff was seen by a nurse after plaintiff requested to be seen for asthma. Dkt. No. 97-1 at 35. The exam showed that plaintiff had a respiratory rate of 14, which indicated that plaintiff had no difficulty breathing. *Id.*; Barnett Decl. ¶ 18. The nurse's notes also observed that plaintiff's respiration was "even and unlabored." Dkt. No. 97-1 at 35.

The triage record from April 23, 2014, the date that plaintiff alleges he suffered a "man down" emergency, notes that plaintiff's chief complaint was that he felt anxious while reading legal documents. *Id.* at 36. On that day, plaintiff's respiration was equal, clear, and normal, but rapid. *Id.* Although plaintiff claimed to have asthma, there was no respiratory distress, and plaintiff was able to speak in full sentences. *Id.* at 37. In conclusion, the notes state that plaintiff

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

13

was encouraged to "put in for asthma condition if he is having episodes of asthma." *Id.* "Today was not an asthma episode / EKG was also normal." *Id.* "No current history of asthma." *Id.*

An endocrinologist's report the following day, on April 24, 2014, noted that plaintiff had "no complaints," and was doing "very well." Barnett Decl. ¶ 19, Ex. B at AGO018. On April 30, 2014, Dr. Ahmed's notes show that plaintiff's breathing and physical examination did not result in any abnormal findings. Barnett Decl. ¶ 19, Ex. B at AGO019.

On May 6, 2014, Dr. Ahmed saw plaintiff and noted that plaintiff complained that he experienced approximately five asthma attacks within three months. Barnett Decl. ¶ 20, Ex. B at AGO020. According to Dr. Ahmed's notes, plaintiff informed Dr. Ahmed that each of the five attacks resolved on its own. *Id.* at AGO020. Plaintiff stated that his father had died recently, so plaintiff had a lot of anxiety which may have contributed to the asthma. *Id.* Plaintiff was worried that plaintiff was beginning to develop asthma. *Id.* Dr. Ahmed observed no pulmonary distress, and noted that plaintiff was not coughing or wheezing. Barnett Decl. ¶ 20, Ex. B at AGO020. Plaintiff also had normal oxygen saturation and normal lung function. *Id.* Dr. Ahmed advised plaintiff to seek immediate care at emergency or triage if plaintiff had any asthma-like symptoms. *Id.*

Viewing the evidence in the light most favorable to plaintiff, the record shows that Dr. Ahmed did not observe any signs of asthma; while under Dr. Ahmed's care, no medical records showed plaintiff having any asthma-like symptoms; plaintiff told Dr. Ahmed that plaintiff's self-reported asthma attacks resolved on their own; and plaintiff believed the latest attack was caused by anxiety. The undisputed facts show that medical examinations by Dr. Ahmed, an unnamed nurse, and during plaintiff's emergency visit to triage revealed no symptoms or showing of asthma, and that triage staff and Dr. Ahmed advised plaintiff to seek immediate care if plaintiff experienced asthma-like symptoms.

A difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment does not amount to deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). In particular, plaintiff's opinion that any purported delay in seeing Dr. Ahmed for complaints of asthma does not, without more, state a claim of deliberate indifference. *See Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). Rather, in order to prevail on a claim based on delayed treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, such treatment was chosen in conscious disregard of an excessive risk to the plaintiff's health, and the delay resulted in harm to the plaintiff. *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) ("For example, if it were proved at trial that doctors denied a prisoner on dialysis a kidney transplant because of personal animosity rather than in the exercise of honest medical judgment, and that the delay in performing the transplant was "medically unacceptable," that would establish deliberate indifference to a serious medical need.").

Here, there is no evidence to suggest that the delay in seeing Dr. Ahmed resulted in harm to the plaintiff. The medical records from 2013 do not suggest that plaintiff suffered from asthma attacks. There is also an absence of evidence that plaintiff suffered from any harm as a result of any delay. Moreover, in light of the lack of medical evidence demonstrating that plaintiff suffered from asthma attacks, plaintiff's disagreement with Dr. Ahmed's decision to not treat the asthma or order a test to confirm asthma is nothing more than a difference of opinion. Plaintiff does not provide any evidence from which it can be inferred that Dr. Ahmed's decision was medically unacceptable under the circumstances, or that Dr. Ahmed made those decisions in conscious disregard of an excessive risk to plaintiff.

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

15

Accordingly, defendants are entitled to summary judgment as to Count 2.[7]

B.   Count 14

Plaintiff claims that Dr. Ahmed refused to treat plaintiff's chronic foot injury and pain. Plaintiff alleges that foot care for diabetic patients is of high importance. Dkt. No. 97-5 at 34. On February 14, 2014, plaintiff met with Dr. Ahmed for a consultation. *Id.* at 29. Plaintiff asserts that he discussed his foot pain with Dr. Ahmed. *Id.* at 30. According to plaintiff, Dr. Ahmed was supposed to schedule a foot care specialist to see plaintiff, but Dr. Ahmed did not. Dkt. No. 31-1 (Am. Compl.) at 56. Plaintiff alleges that from February 3, 2014 through November 27, 2014, his feet were not examined. *Id.* at 57. In plaintiff's reply, dkt. no. 107, plaintiff clarifies that while he did receive several topical "screenings" of his feet, he did not receive any internal examination of his feet. Dkt. No. 107 at 7-8. Plaintiff argues that he should have received a complete foot exam rather than just screenings. *Id.* Plaintiff asserts that Dr. Ahmed's treatment of plaintiff's feet constituted deliberate indifference because a diabetic with a foot problem can lead to amputation if not treated properly.

Defendants provide medical records showing that on February 14, 2014, Dr. Ahmed did recognize that plaintiff needed regular foot care because plaintiff is a diabetic. Barnett Decl. ¶ 25, Ex. B at AGO014-AGO015. Dr. Ahmed's notes indicated that plaintiff had been seen by a podiatrist on some unspecified date. *Id.* There is no specific notation about plaintiff's foot condition otherwise. *Id.* On April 2, 2014, Dr. Ahmed referred plaintiff for a foot exam by a podiatrist. *Id.* ¶ 28, Ex. B at AGO022-AGO024. On May 29, 2014, a podiatrist examined plaintiff's feet for plaintiff's "annual diabetes foot exam," and noted that plaintiff had some toe nail fungus, but otherwise the examination showed no abnormalities. *Id.* and Ex. B at AGO025.

---

[7] In light of the court's decision on Count 2, it is unnecessary to address defendants' alternative argument that they are entitled to qualified immunity on Count 2.

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

16

According to Dr. Barnett, the American Diabetic Association provides that a health care provider "should check the feet of diabetics at least once a year or more often if the patient has foot problems." Barnett Decl. ¶ 26.

In May 2015, Dr. Ahmed ordered an x-ray of plaintiff's feet, and the results showed an old, healed fracture and possible gout. *Id.* ¶ 30, Ex. B at AGO028-AGO029. In June 2015, after plaintiff complained that his foot pain and swelling returned, Dr. Ahmed examined plaintiff and found no observable difficulty in plaintiff's walking and no swelling in plaintiff's extremities. *Id.* ¶ 30, Ex. B at AGO030-AGO032. On October 13, 2015, an examination by an endocrinologist also described no foot swelling and a normal gait. *Id.* and Ex. B at AGO033.

In order for deliberate indifference to be established there must be a purposeful act or failure to act on the part of the defendant and resulting harm. *See McGuckin*, 974 F.2d at 1060. A showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1058, 1059-60 (9th Cir. 2004). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *See id.* at 1058.

Here, although plaintiff clearly would have preferred an internal foot examination as opposed to multiple topical screenings, plaintiff has not demonstrated how the multiple topical screenings as alternative courses of treatment were medically unacceptable, or that Dr. Ahmed's failure to order an internal foot examination was a decision chosen in conscious disregard of an excessive risk to plaintiff's health. There is also an absence of evidence to show that Dr. Ahmed's treatment of plaintiff's feet was medically unacceptable, or that it resulted in any harm. Without

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

17

such evidence, there is no genuine issue of material fact and defendants are entitled to summary judgment on Count 14.[8]

The court grants defendants' motion for summary judgment. Defendants' motion to stay discovery pending their motion for summary judgment is denied as moot. Dkt. No. 123.

IV.  Plaintiff's motion to amend complaint

Plaintiff has filed a motion to amend his amended complaint to include third parties. Dkt. No. 115. In support of the motion, plaintiff cites to Federal Rule of Civil Procedure 14 which governs "third-party practice." *See* Fed. R. Civ. P 14. However, Rule 14(b) states that a plaintiff may bring in a third party "when a claim is asserted against a plaintiff." *See* Fed. R. Civ. P. 14(b). Here, no claim has been asserted against plaintiff. Thus, Rule 14 is inapplicable here.

To the extent plaintiff intended to request leave to amend his amended complaint pursuant to Federal Rule of Civil Procedure 15, that request is denied. Rule 15(a)(2) allows a party to amend its pleading "only with the opposing party's written consent or the court's leave." *See* Fed. R. Civ. P. 15(a)(2). Plaintiff seeks to add seven new claims, which presumably occurred subsequent to the commencement of this lawsuit. The court lacks venue over five of the claims, as they did not arise in the Northern District of California. Thus, plaintiff shall not be granted leave to include those five claims.

Moreover, as noted by defendants, this court's local rules require a party who wishes to file an amended pleading to "reproduce the entire proposed pleading" without incorporating any part of a prior pleading by reference. *See* N.D. Civ. L. R. 10-1. Plaintiff is also reminded that, as a general rule, an amended complaint supersedes the original complaint. *See Lacey v. Maricopa*

---

[8] In light of the court's decision on Count 14, it is unnecessary to address defendants' alternative argument that they are entitled to qualified immunity on Count 14.

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

18

*County*, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc).  Here, plaintiff has not provided any proposed second amended complaint.  Thus, the motion to amend is denied without prejudice.

V.      Referral to pro se prison settlement program

The court finds good cause to refer this matter to U.S. Magistrate Judge Vadas pursuant to for settlement proceedings on the deliberate indifference claims in Counts 1, 3-7, and 11-13 discussed above.  The proceedings will consist of one or more conferences as determined by Judge Judge.  The conferences shall be conducted with all interested parties or their representatives, attending by videoconferencing if they so choose.  If these settlement proceedings do not resolve this matter, the court will address plaintiff's motions for summary judgment which have been fully briefed.

**CONCLUSION**

1.      Defendants' motion to dismiss is DENIED.  Defendants' motion for summary judgment on Counts 2 and 14 is GRANTED.

2.      Defendants' motion to stay is DENIED as moot.  Plaintiff's motion to amend is DENIED without prejudice.

3.      The instant case is REFERRED to U.S. Magistrate Judge Vadas for settlement proceedings on the claims in this action, as described above.  The proceedings shall take place within **one-hundred twenty (120) days** of the filing date of this order.  Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings.

4.      If these settlement proceedings do not resolve this matter, the court will address plaintiff's motions for summary judgment, which have been fully briefed.

5. The instant case is STAYED pending the settlement conference proceedings. The clerk shall ADMINISTRATIVELY CLOSE this case until further order of the court.

**IT IS SO ORDERED.**

DATED: March 6, 2017

*Lucy H. Koh*
LUCY H. KOH
UNITED STATES DISTRICT JUDGE

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING DEFENDANTS' MOTION TO DISMISS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO SETTLEMENT; INSTRUCTIONS TO CLERK

20