United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SCOTT PEASLEY,<br><br>   Plaintiff,<br><br>   v.<br><br>WARDEN M. SPEARMAN, et al.,<br><br>   Defendants. | Case No. 15-CV-1769 LHK (PR)<br><br>**ORDER DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT; ORDER TO LOCATE COUNSEL**<br><br>Re: Dkt. Nos. 76, 97 |

Plaintiff, a California prisoner proceeding *pro se*, has filed an amended civil rights complaint, pursuant to 42 U.S.C. § 1983. In the amended complaint, plaintiff alleged that defendants were deliberately indifferent to his serious medical needs by failing to adequately treat his Type-I diabetes.[1] Before the court are plaintiff's motions for summary judgment. For the reasons stated below, the court denies plaintiff's motions for summary judgment, and orders the Federal Pro Se Program to locate counsel to represent plaintiff.

---

[1] Defendant Officer Maria L. Lopez has not entered an appearance in this case.

# BACKGROUND

Plaintiff suffers from Type-I diabetes, which means that plaintiff cannot produce insulin. Thus, according to plaintiff, he needs two types of insulin: one is used as a base to support the insulin levels between meals, and the other – rapid-acting insulin – is used to offset the foods that he eats. This second type of insulin is critical because it balances the food and insulin.

In the amended complaint, plaintiff generally alleges that in May 2013, Dr. Ahmed began discontinuing plaintiff's insulin and blood sugar testing plan. (Count 1.) As a result, plaintiff contracted ketoacidosis which defendants failed to treat. (Count 4.) Plaintiff also claims that defendants had a policy of denying non-formulary medications and treatments, even when recommended by a specialist. (Counts 3, 5, 11-13.) Plaintiff lists several instances when Chief Medical Officer ("CMO") Ellis, Dr. Bright, and Dr. Ahmed denied plaintiff insulin and blood sugar level testing, against the recommendations of a specialist. (*Id.*) Plaintiff further alleges that Dr. Ahmed was deliberately indifferent in treating plaintiff's asthma and foot. (Counts 2, 14.) Finally, plaintiff alleges that Officers Lopez, Gibson, and Orozco denied plaintiff access to medical care and food, despite knowing that plaintiff was a diabetic. (Counts 6-7.)

# PROCEDURAL HISTORY

Plaintiff's amended complaint raised 15 Counts. After screening the amended complaint, the court dismissed Counts 10 and 15 in its order of service. On July 18, 2016, defendants filed a motion to dismiss Counts 1-9, 11-13 based on res judicata, and moved for summary judgment on Counts 2 and 14. Plaintiff filed an opposition, and defendants filed a reply.

On May 23, 2016, plaintiff filed a motion for summary judgment on Counts 6-9. On July 19, 2016, defendants filed an opposition, essentially parroting their res judicata argument on Counts 1-9 and 11-13, and summary judgment argument on Counts 2 and 14.

On July 29, 2016, plaintiff filed a motion for summary judgment on Counts 1-5, 11-14. On August 12, 2016, defendants filed a statement that their previously filed July 19, 2016

opposition should serve as an opposition to plaintiff's second motion for summary judgment as well. On August 29, 2016, plaintiff filed replies to defendants' opposition.

On March 6, 2017, the court denied defendants' motion to dismiss Counts 1-9 and 11-13 based on res judicata, granted defendants' motion for summary judgment on Counts 2 and 14, and referred the matter to settlement proceedings. The court informed the parties that if settlement proceedings were unsuccessful, the court would then resolve plaintiff's motions for summary judgment. On May 11, 2017, the court was informed that the parties were unable to settle.

The court now addresses plaintiff's motions for summary judgment which have been fully briefed. The remaining counts are Counts 1, 3-9, and 11-13. Counts 8 and 9 name Lopez as the sole defendant. Because Lopez has not appeared, the court will not address Counts 8 or 9 at this time. Thus, the remaining counts for consideration in this order are Counts 1, 3-7, and 11-13.

For the reasons stated below, the court denies plaintiff's motions for summary judgment on Counts 1, 3-7, and 11-13, and orders the Federal Pro Se Program to locate counsel for plaintiff.

**STANDARD OF REVIEW**

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party for summary

judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *See id.* at 323. Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.*

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." *In re Oracle Corporation Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Liberty Lobby*, 477 U.S. at 252). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citing *Liberty Lobby*, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323.

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

**DISCUSSION**

I.  Relevant law

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two

elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). Insulin-dependent Type-I diabetes is a serious medical condition for purposes of Eighth Amendment analysis. *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003). Failing to provide a person suffering from Type-I diabetes with proper food or insulin creates a serious risk of harm. *Id.* at 419-20.

A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

II. Analysis

Plaintiff moves for summary judgment on Counts 1, 3-7, and 11-13. Defendants have filed an opposition, in which they relied primarily on res judicata for Counts 1-9 and 11-13. Plaintiff has filed replies. The court previously addressed defendants' res judicata argument in its March 6, 2017 order, and concluded that res judicata was inapplicable. Thus, the only question remaining is whether plaintiff is entitled to summary judgment. To resolve that question, the court views the facts in the light most favorable to defendants, the non-moving party.

A.  Count 1

Plaintiff alleges that in Dr. Ahmed, CMO Ellis, and Warden Spearman improperly discontinued plaintiff's insulin and blood sugar level tests, disallowed urgent care and food for plaintiff, and forced plaintiff to suffer ketoacidosis. In May 2013, Dr. Ahmed was plaintiff's treating physician. Dkt. No. 97 ("Pl. Mot. For Sum. Judg.") at 11. On May 26, 2013, Dr. Ahmed discontinued plaintiff's rapid-acting insulin and reduced plaintiff's daily blood sugar level testing. Dkt. No. 97 at 11-12. The rapid-acting insulin dose for plaintiff's pre-meals was lowered from almost 50 units every day to zero. *Id.* Plaintiff was given "lantus" insulin instead, which requires the additional use of fast-acting insulin. *Id.* and Ex. B at 4. On June 6, 2013, Dr. Ahmed told plaintiff that it was prison policy to "run the [blood sugar levels] higher." Dkt. No. 97 at 41. On June 12, 2013, however, Dr. Ahmed reduced the lantus and, after discussing the issue with CMO Ellis, ordered a small amount of rapid-acting insulin to add to plaintiff's medication. *Id.* at 42.

Plaintiff states that without the rapid-acting insulin, plaintiff felt he could not eat without endangering himself, and as a result of not eating, sometime after May 26, 2013, plaintiff contracted ketoacidosis which went untreated for over a month. Dkt. No. 97 at 13-14. Plaintiff alleges that even though plaintiff requested help and submitted four emergency notices, Dr. Ahmed continued to reduce plaintiff's blood sugar level testing and, until June 12, 2013, refused to order plaintiff fast-acting insulin. *Id.* at 12. Plaintiff informed CMO Ellis and Warden Spearman, but neither CMO Ellis nor Warden Spearman intervened. *Id.* at 13.

Defendants provide a declaration from non-defendant Dr. Barnett, who asserts that he reviewed all of plaintiff's medical records from 2008 through 2016. Barnett Decl. ¶ 5. In Dr. Barnett's opinion, based on plaintiff's medical records, Dr. Ahmed provided adequate care for plaintiff's diabetes.

Outside of plaintiff's apparent self-diagnosis of ketoacidosis, plaintiff has not provided any evidence to affirmatively demonstrate that he in fact contracted ketoacidosis. Plaintiff offers no

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT; ORDER TO LOCATE COUNSEL
6

nonconclusory evidence to support his claim that he contracted ketoacidosis or that he contracted ketoacidosis because of Dr. Ahmed's actions. Plaintiff's claim that Dr. Ahmed ignored four emergency notices to medical care is also unsupported by any facts to demonstrate that Dr. Ahmed received those notices or was otherwise aware of plaintiff's emergency requests.

Viewing the evidence in the light most favorable to defendants, the court cannot find that no reasonable trier of fact could find for defendants on plaintiff's allegation that Dr. Ahmed, knowing that plaintiff would face a substantial risk of serious harm, discontinued plaintiff's rapid-acting insulin from May 26, 2013 to June 12, 2013, and reduced the number of times plaintiff could test his blood sugar level. Nor can the court find, based on the evidence presented, that no reasonable trier of fact could find for defendants on plaintiff's allegation that CMO Ellis and Warden Spearman were deliberately indifferent for failing to intervene. Plaintiff has not presented sufficient evidence to establish that defendants' course of treatment "was medically unacceptable under the circumstances [and] chosen in conscious disregard of an excessive risk to [the prisoner's] health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004); *see Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (recognizing that a mere "difference of medical opinion . . . [is] insufficient, as a matter of law, to establish deliberate indifference.").

Plaintiff's motion for summary judgment on Count 1 is denied.

B.  Count 3

On July 14, 2014, Dr. Kumar, an endocrinology specialist, recommended that plaintiff stop using the insulin humulin-r, and change it to humolog. Dkt. No. 97-2 at 27. Humolog is a rapid-acting insulin. Dr. Ahmed filled out a nonformulary drug request form to get approval to order humolog for plaintiff. Dkt. No 97-2 at at 30. Despite Dr. Kumar's recommendation for humolog, on August 1, 2014, CMO Ellis and Dr. Bright denied the request for humolog because it was a non-formulary medication. Dkt. No. 31 at 39-40. Plaintiff alleges that "formulary" refers to a standard or minimum level of care that the California Department of Corrections and

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT; ORDER TO LOCATE COUNSEL
7

Rehabilitation uses. Dkt. No. 31 at 40. In denying the request for humolog, Dr. Bright stated that humolog did not provide better control than humulin-r, and that humolog was more difficult to manage in the prison setting. *Id.* Plaintiff asserts that because humolog was a better insulin for plaintiff, CMO Ellis and Dr. Bright were deliberately indifferent when they denied its use for plaintiff. Plaintiff states that without humolog, he suffers from an elevated sugar level, nausea, swollen feet, and a shortened life span. Dkt. No. 31 at 40.

Plaintiff has attached as evidence, medical notes from December 2009 from San Quentin State Prison and January 2008 from what appears to be Sutter Health. Dkt. Nos. 41-42. Both medical notes reflect that plaintiff was using humolog. *Id.* Plaintiff's records also show that Dr. Kumar did recommend changing humulin-r to humolog.

However, plaintiff provides no non-conclusory evidence that the refusal to change humulin-r to humolog caused plaintiff harm, which is a necessary element to a claim of deliberate indifference to serious medical needs. There is also no evidence that Dr. Bright or CMO Ellis denied the humolog knowing that plaintiff would face a substantial risk of harm without it. Further, although Dr. Bright was not a treating physician, his reason for denying the change appears to be based on his medical opinion that humolog did not provide better control than humulin-r.

The court notes that in *Snow v. McDaniel*, 681 F.3d 978, 985-87 (9th Cir. 2012), the Ninth Circuit reversed a grant of summary judgment to defendants when they repeatedly denied hip surgery to a prisoner for three years, instead opting to use non-surgical interventions despite receiving two specialists' consistent recommendations that plaintiff required hip surgery. While the facts in *Snow* are certainly more egregious, the Ninth Circuit reasoned that "a medication-only course of treatment may have been medically acceptable for a certain period of time, the question remains whether it was medically unacceptable and subjectively reckless to ignore a "long term" recommendation for three years, or to ignore "emergency" and "urgent" requests for more than

two years." *Id.* at 988. Here, there are insufficient facts to conclude that denying the change from humulin-r to humolog was medically unacceptable under the circumstances or that defendants chose this course of treatment in conscious disregard of an excessive risk to plaintiff's health. *See Toguchi*, 391 F.3d at 1058.

Based on the current record, plaintiff has not met his initial burden of affirmatively showing that no reasonable juror could find for defendants. Plaintiff's motion for summary judgment on Count 3 is denied.

C. Count 4

In Count 4, plaintiff alleges that he contracted ketoacidosis, which resulted in his failure to eat because the lack of rapid-acting insulin made him fear eating lest his blood sugar level got too high. Dkt. No. 31 at 43-44. According to plaintiff, ketoacidosis occurs as soon as blood sugar levels exceed 250. *Id.* at 44. Plaintiff claims that because of the ketoacidosis, he suffered severe nausea, sleepiness, leg aches, swollen feet, and body aches. *Id.* at 43-44. Plaintiff states that Dr. Ahmed, CMO Ellis, and Warden Spearman were aware of the ketoacidosis but failed to treat him for over one month. *Id.*

Plaintiff has submitted as evidence apparent self-reported blood sugar levels from unspecified dates that show when his blood sugar levels exceeded 250. Dkt. No. 97 at 47-48. However, there is no evidence such as medical records reflecting a ketoacidosis diagnosis to support plaintiff's claim that he was suffering from ketoacidosis, or that defendants knew plaintiff believed he was suffering from ketoacidosis. Even relying on plaintiff's exhibit of a publication regarding Type-I diabetes, the description of ketoacidosis suggests that the development of ketoacidosis may not occur only when blood sugar levels exceed 250, but also when blood ketones are above certain levels. Dkt. No. 97-3 at 5-7. Plaintiff has not submitted any evidence regarding his blood ketone levels.

Based on this record, plaintiff has not met his initial burden and the court cannot find that no reasonable juror could find for defendants, and plaintiff's motion for summary judgment on Count 4 is denied.

D. Count 5

Plaintiff alleges that in April and May 2014, Dr. Ahmed, Warden Spearman, and CMO Ellis were deliberately indifferent to his serious medical needs when they did not allow plaintiff to possess his own glucometer, which is a device for testing one's blood sugar level. Dkt. No. 31 at 50. In 2009, while housed at San Quentin State Prison, plaintiff was permitted to have a "keep on person" ("KOP") glucometer. Dkt. No. 97-3 at 13, 32. Plaintiff claims that having a glucometer is a medical necessity and defendants' policy of disallowing a personal glucometer purposefully is causing him harm.

Plaintiff has provided no evidence to demonstrate that defendants knew that denying plaintiff a KOP glucometer would result in a substantial risk of serious harm or that defendants disregarded such a risk. Plaintiff acknowledges that different prisons have different policies regarding a KOP glucometer, and then makes a conclusory statement that denying a KOP glucometer causes harm. While having the ability to check one's blood sugar level at all times is certainly convenient, there is no evidence from which to infer that not having a KOP glucometer resulted in a substantial risk of serious harm or that defendants knew that not having a KOP glucometer would result in a substantial risk of serious harm. Based on this record, plaintiff has not met his initial burden and the court cannot find that no reasonable juror could find for defendants. Plaintiff's motion for summary judgment on Count 5 is denied.

E. Count 6

In Count 6, plaintiff alleges that defendants Lopez, Gibson, and Orozco denied plaintiff urgent medical treatment. Dkt. No. 31 at 56. Plaintiff states that he informed them of an urgent medical need, and they knew that plaintiff was a diabetic who required daily frequent access to

medication and meals, yet left plaintiff in his locked cell. *Id.* at 57; Dkt. No. 76-1 at 5. Specifically, plaintiff alleges that on September 7, 2013, plaintiff had his door marked for medical release. *Id.* at 11. Gibson and Orozco spoke with an unnamed nurse, who was only permitted to dispense medication and was unable to test plaintiff's blood sugar level without a specific order to do so. *Id.* Plaintiff claims that a previous nurse told plaintiff to get to the medical clinic and someone at the clinic would test his blood sugar level. *Id.* Gibson and Orozco ignored plaintiff's request to go to the medical clinic for this unscheduled blood sugar level test and left him in his cell. *Id.*

According to the informative chrono authored by Gibson that plaintiff attached in his exhibits, at the time of these events, plaintiff told Gibson that he wanted to get a blood sugar level test so that plaintiff would know how much food he should eat before bed. Dkt. No. 76-1 at 15. Gibson confirmed that plaintiff was not scheduled for a diabetic blood check test at that time, and denied plaintiff's request. *Id.*

Viewing the evidence in the light most favorable to defendants, the court cannot say that plaintiff has met his burden of proving that no reasonable trier of fact would find for defendants. There is insufficient evidence to find as a matter of law that Gibson and Orozco denied plaintiff's self-described urgent request to go to the medical clinic for a blood sugar level check knowing that disallowing plaintiff to do so opened plaintiff up to a substantial risk to his health. Nor is there evidence that plaintiff looked or acted ill, or in need of medical attention. There is no evidence to suggest that defendants inferred that plaintiff would be at serious risk if they forbade him from receiving a blood sugar level test at that moment. *Cf. Lolli*, 351 F.3d at 420-21 (finding a genuine issue of material fact as to whether prison officers consciously disregarded a serious risk to plaintiff's health). Moreover, it is unclear what harm plaintiff suffered as a result of the unspecified delay before plaintiff in fact received a blood sugar level test.

Plaintiff fails to affirmatively demonstrate that Orozco or Gibson responded to plaintiff with deliberate indifference. *See Farmer*, 511 U.S. at 834. Here, the refusal to provide plaintiff with an unscheduled blood sugar level test on a single occasion may be characterized as "an 'isolated occurrence' or an 'isolated exception,'" which the Ninth Circuit has determined "militates against a finding of deliberate indifference." *See McGuckin*, 974 F.2d at 1060. In this regard, based on plaintiff's evidence, defendants' alleged misconduct on this one occasion cannot be said to amount to a failing of constitutional magnitude as a matter of law.

Based on the current record, plaintiff has not affirmatively demonstrated that the delay in getting a blood sugar level check caused further harm, and that Gibson and Orozco knew this to be the case. "In order to know of the excessive risk, it is not enough that the person merely 'be aware of facts from which their inference could be drawn that a substantial risk of serious harm exists, [] he must also draw that inference.'" *See Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 842), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). Here, plaintiff has presented evidence suggesting that Gibson or Orozco delayed plaintiff's request for medical care because plaintiff did not have a scheduled blood sugar level test at that time. Plaintiff has not presented evidence suggesting that Gibson or Orozco was aware of any substantial risk of serious harm to plaintiff if plaintiff did not receive a blood sugar level test when he asked for one.

Accordingly, plaintiff's motion for summary judgment on Count 6 is denied.

F.     <u>Count 7</u>

In Count 7, plaintiff alleged that on July 14, 2013, Officer Orozco denied plaintiff access to a meal after plaintiff received his insulin injection, yet allowed the other inmates to eat. Dkt. No. 31-1 at 6, 8. Diabetic prisoners had their cells specially unlocked so that they may receive their medications. Dkt. No. 76-2 at 7. Around 4:00 p.m., which was within the 30 minutes after plaintiff received an insulin injection, Orozco refused to allow plaintiff to access his meal even

though other inmates were allowed to access their meals, and no food or snack was provided to plaintiff. Dkt. No. 31-1 at 7; Dkt. No. 76-2 at 3. Orozco accused plaintiff of not following orders, so Orozco told plaintiff to sit in the cell while Orozco let other inmates out to eat. Dkt. No. 76-2 at 7. According to the administrative grievance filed by plaintiff, Orozco claimed that leaving plaintiff locked in plaintiff's cell was an accident. *Id.* at 16. Plaintiff argues that Orozco intentionally left plaintiff in his cell during meal time. As a result of the failure to allow plaintiff to eat, plaintiff felt shaky and weak, and was unable to stand. Plaintiff was later treated for an emergency diabetic reaction.

Viewing the evidence in the light most favorable to defendants, the court cannot say that plaintiff has met his burden of demonstrating that no reasonable trier of fact would find for defendants. Based on the current record, plaintiff has not affirmatively shown that Orozco knew that denying or delaying plaintiff a meal on July 14, 2013 opened plaintiff up to a substantial risk of serious harm. *See Gibson*, 290 F.3d at 1188. Here, plaintiff has presented evidence suggesting that Orozco accidentally left plaintiff in plaintiff's cell. At the very least, this is an issue of credibility which the court is not permitted to decide at this stage of the proceedings.

Accordingly, plaintiff's motion for summary judgment on Count 7 is denied.

G. Counts 11, 12, and 13

In Count 11, plaintiff alleged that on April 3, 2015, Dr. Ahmed recommended prescribing a non-formulary drug to treat plaintiff's diabetes, as was recommended by a specialist. Dkt. No. 97-4 at 19, 23; Dkt. No. 31-1 at 32-35. According to the form, Dr. Bright denied the non-formulary drug, stating that "regular insulin at night is too dangerous." Dkt. No. 97-4 at 23.

In Count 12, plaintiff alleges that on April 11, 2015, Dr. Bright and CMO Ellis denied Dr. Ahmed's recommendation for blood sugar level testing, as recommended by Dr. Kumar. Dkt. No. 97-4 at 38-39; Dkt. No. 31-1 at 45-46. Plaintiff also alleges that Dr. Ahmed stopped the specialist's recommendation to test plaintiff's blood sugar level at night. Dkt. No. 97-4 at 39.

In Count 13, plaintiff alleged that in April 2015, Dr. Ahmed, CMO Ellis, and Dr. Bright rejected Dr. Kumar's recommendations, which effectively denied plaintiff food because plaintiff was unable to properly monitor and manage his blood sugar levels. Dkt. No. 31-1 at 51-52; Dkt. No. 97-5 at 2.

Plaintiff makes conclusory assertions that the prison's treatment of his diabetes, which did not follow Dr. Kumar's recommendations is unsafe. *Id.* at 4. However, plaintiff does not provide evidence to support the necessary element that defendants knew plaintiff faced a substantial risk of serious harm if they failed to abide by Dr. Kumar's recommendations. Similar to Count 3, there are insufficient facts to conclude that defendants' denial of a non-formulary drug or the reduction of nighttime blood sugar level testing was medically unacceptable under the circumstances or that defendants chose that course of treatment in conscious disregard of an excessive risk to plaintiff's health. *See Toguchi*, 391 F.3d at 1058.

Based on the current record, plaintiff has not met his burden to show that no reasonable juror could find for defendants. Plaintiff's motion for summary judgment on Counts 11, 12 and 13 is denied.

## CONCLUSION

Plaintiff's motions for summary judgment are DENIED.

It appears that this case will be tried. The court concludes that counsel should be appointed for plaintiff, and refers this case to Kevin Knestrick of the Federal Pro Se Program to locate counsel. Upon an attorney being located to represent plaintiff, that attorney shall be appointed as counsel for plaintiff in this matter until further order of the court.

**IT IS SO ORDERED.**

DATED: 9/26/2017

LUCY H. KOH
UNITED STATES DISTRICT JUDGE

Case No. 15-CV-1769 LHK (PR)
ORDER DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT; ORDER TO LOCATE COUNSEL
14