UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

DAVID SCOTT PEASLEY,

        Plaintiff,

    v.

M. WARDEN SPEARMAN, et al.,

        Defendants.

Case No. 15-CV-01769-LHK

**ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Re: Dkt. Nos. 238, 239, 242

      Plaintiff David Scott Peasley ("plaintiff"), a California prisoner, has filed an amended civil rights complaint pursuant to 42 U.S.C. § 1983. In the amended complaint, plaintiff alleges that defendants—all of whom were medical and correctional personnel at plaintiff's former prison, the Correctional Training Facility ("CTF")—were deliberately indifferent to his serious medical needs

1

by failing to adequately treat his Type 1 diabetes. All defendants except for Dr. Ahmed have filed a motion for judgment on the pleadings and for summary judgment. Defendant Dr. Ahmed has filed a motion for leave to file a second motion for summary judgment, while plaintiff has filed a motion for leave to file a late opposition to Dr. Ahmed's motion for leave. The Court held a hearing on the motions on September 18, 2018.

Having considered the parties' briefing, arguments at the hearing, the relevant law, and the record in this case, the Court GRANTS Dr. Ahmed's motion for leave to file a second motion for summary judgment, GRANTS plaintiff's request for leave to file a late opposition to Dr. Ahmed's motion for leave, GRANTS IN PART AND DENIES IN PART defendants' motion for summary judgment, and DENIES defendants' motion for judgment on the pleadings. Count 4 against Dr. Ahmed and Count 8 against Officer Lopez survive defendants' motion for summary judgment.

## I.    BACKGROUND

### A. Factual Background

The following facts are taken in the light most favorable to plaintiff unless otherwise indicated. Plaintiff was incarcerated at CTF between April 2013 and December 2015. Plaintiff suffers from Type 1 diabetes, which means that plaintiff's body cannot produce insulin. Like all people with Type 1 diabetes, plaintiff needs two types of external insulin: one as a base to support the insulin levels between meals, and the other – rapid-acting insulin – to offset the foods that he eats. ECF No. 241-47 ¶¶ 23-24. Plaintiff is a brittle diabetic, which means that his blood sugar levels are labile and experience significant swings. ECF No. 241-47 ¶ 28.

Defendants are Dr. Ahmed, plaintiff's primary care physician at CTF, ECF No. 238-1 ¶ 2; Dr. Bright, the former chief physician at CTF, ECF No. 238-4 ¶ 2; Ellis, the Chief Executive Officer for Health Services at CTF, ECF No. 238-6 ¶ 1; Warden Spearman, warden of CTF at the time of plaintiff's incarceration there, ECF No. 238-20 ¶ 1; and CTF correctional officers Gibson, Lopez, and Orozco. ECF No. 238-11 ¶ 2.

Plaintiff's lawsuit concerns his medical treatment at CTF between May 2013 and April 2015. In May 2013, Dr. Ahmed temporarily changed plaintiff's insulin regimen. ECF No. 238-1 ¶ 7. Specifically, Dr. Ahmed discontinued plaintiff's standing pre-meal doses of Humulin R, a fast-acting insulin ("Regular insulin"). *Id.* Instead, plaintiff received Regular insulin before meals on a sliding scale, with the dosage dependent on plaintiff's blood sugar level at the time. *Id.* In conjunction, Dr. Ahmed increased plaintiff's dosage of long-acting Lantus insulin. *Id.* at ¶ 8; *see also* ECF No. 241-47 ¶¶ 42-47 (charts tracking changes in plaintiff's insulin regimen). Dr. Ahmed testified that because plaintiff's diabetes had been "extremely labile," he made the temporary change to "examine the patterns of [plaintiff's] blood-sugar levels without the standing pre-meal insulin for a relatively short time." ECF No. 238-1 ¶ 8. Plaintiff had experienced "repeated episodes of hypoglycemia" prior to the change in regimen. *Id.* Dr. Ahmed also suggested that he made the change because plaintiff failed to comply with many of the medical staff's dietary recommendations and other diabetes management efforts. *Id.* at ¶ 9.

Hypoglycemia (low blood sugar) and hyperglycemia (high blood sugar) are the primary complications of diabetes. ECF No. 241-47 ¶ 29. Hypoglycemia occurs when blood sugar levels fall below 70 mg/dL. ECF No. 238-7 ¶ 8. Hypoglycemia may cause symptoms like "irritability, sweats, headaches, tremulousness, anxiety, and hunger" and, if severe, can lead to a loss of consciousness or even death. *Id.*; ECF No. 241-47 ¶ 29. Prolonged hyperglycemia, on the other hand, can cause "blurred vision, very frequent urination, extreme thirst and hunger, weight loss, fatigue, and lethargy." ECF No. 241-47 ¶ 29. Prolonged hyperglycemia can also cause diabetic ketoacidosis ("ketoacidosis"), a serious medical condition. *Id.* at ¶ 30. In brief, ketoacidosis results from the overproduction of ketone bodies to compensate for the unavailability of glucose, and can make a person's blood too acidic. *Id.; see also* ECF NO. 238-7 ¶ 20 ("Ketoacidosis is a metabolic state associated with high concentrations of ketone bodies."). Symptoms of ketoacidosis include "fruity odor of breath, difficulty breathing, confusion, and loss of

3

consciousness," among others. *Id.*

In all, plaintiff received no standing pre-meal insulin for a period of twenty days from late May to mid-June. ECF No. 241-47 ¶ 48. However, plaintiff often received Regular insulin on a sliding scale as a corrective. ECF No. 238-1 ¶ 10. The prison fully restored plaintiff's previous insulin regimen in early August after Dr. Ahmed was able to consult with non-party endocrinologist Dr. Kumar. *Id.* at ¶ 11. The parties dispute whether Dr. Ahmed's change in plaintiff's insulin regimen harmed plaintiff's health. During the aforementioned 20-day period in May and June when plaintiff did not receive standing pre-meal insulin, plaintiff had four medical visits. *Id.* at ¶ 10. Plaintiff's blood sugar levels were also tested multiple times each day. *Id.*; see ECF No. 241-13 (log of plaintiff's blood sugar levels).

Beginning on May 26 and continuing at least through June 28, plaintiff's blood sugar levels were occasionally over 300 mg/dL. *See, e.g.*, ECF Nos. 241-13, 241-14, & 241-15. In general, plaintiff's blood sugar levels varied. For example, on June 7, plaintiff's breakfast reading was 133 mg/dL, his lunch reading was 350 mg/dL, and his dinner reading was 254 mg/dL. ECF No. 241-14. On occasion, plaintiff's blood sugar levels exceeded 400 mg/dL, including on June 24, June 26, and June 28. ECF No. 241-15. Dr. Ahmed testified that if an inmate's blood sugar level exceeded 400 mg/dL, the prison's protocol was to conduct a urine test for ketone bodies in order to determine if the inmate had a risk of ketoacidosis. ECF No. 241-21, 20:25-21:2-5. However, neither Dr. Ahmed nor any other prison medical staff member ever conducted a urine ketone test on plaintiff. Dr. Ahmed testified that "there was no reason to even test for ketoacidosis because [plaintiff's] vital signs and heart rate were regularly taken while at CTF and were within the normal ranges." ECF No. 241-1 ¶ 13.

Plaintiff tells a different story. For example, plaintiff testified that shortly after the regimen change in May 2013, he went two days without eating because the amount of insulin he was receiving "d[id] not cover food." ECF No. 241-18, 12:4-15. Moreover, plaintiff attested in

4

an interrogatory response that he suffered symptoms including "extreme hunger, excessive thirst, nausea, vomiting, dizziness, fatigue, weakness, lethargy, abdominal pain, loss of consciousness, swollen extremities, loss of vision, fear, mental and emotional anguish." ECF No. 241-16 at 5:6-9. The notes from plaintiff's medical visits during that time do not indicate that medical staff noticed such symptoms. For example, the notes of a June 6 visit indicate that plaintiff had no hypoglycemic episodes, no dizziness, and no blurred vision. ECF No. 238-3, MED-AGO 1066.

Plaintiff filed numerous Health Care Service Request Forms ("Form 7362") to complain about the regimen change. On May 22, 2013, plaintiff complained in a Form 7362 request that "Dr. Ahmed's orders have been altered and are not what we had decided." ECF No. 241-2. Plaintiff asserted that "proactive insulin is required for a Type One diabetic." *Id.* On May 24, in a second Form 7362, plaintiff complained, "insulin not allowed and blood test is denied, not following dr. orders." ECF No. 241-4. That same day, in another Form 7362, plaintiff asserted that Dr. Ahmed's failure to supply a carbohydrate list for meals and the refusal of a blood test was "resulting in cruel and unusual punishment." ECF No. 241-3. Plaintiff further asserted that the standing use of only long-acting Lantus "harm[ed] and endanger[ed]" him. *Id.*

By regulation, the California Department of Corrections and Rehabilitation ("CDCR") provides its inmates and parolees the right to appeal administratively "any policy, decision, action, condition or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available administrative remedies, a prisoner must submit his complaint on CDCR Form 602 ("Form 602") and proceed through several levels of appeal: (1) informal level grievance filed directly with any staff member, (2) first formal level appeal filed within one of the institution's appeal coordinators, (3) second formal level appeal filed with the institution head or designee, and (4) third formal level appeal filed with the CDCR director or designee ("Director's level"). *Id.* at § 3084.5. In this case, California Correctional Health Care

5

ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

Services ("CCHCS") decided plaintiff's Director's level appeals. *See, e.g.*, ECF No. 198, AGO 125.

On June 3, 2013, plaintiff contested the regimen change in the first formal level appeal CTF-HC-13039056, and requested emergency processing. ECF No. 198, AGO 027. Plaintiff wrote that Dr. Ahmed was refusing to provide "fast acting insulin for meals, refused blood tests . . . and restricted food by no insulin." *Id.* The CCHCS Appeals Office ("Appeals Office") rejected plaintiff's request for emergency processing. ECF No. 241-23 at 1. On three subsequent occasions, the Appeals Office notified plaintiff that its response to the appeal would be delayed due to the "[c]omplexity of the decision action or policy, requiring additional research." *Id.* at 3–5. In October 2013, plaintiff asked in a letter to the Appeals Office whether the Director's level would review the appeal "or shall I move directly to court?" *Id.* at 2. On November 14, 2013, plaintiff received CTF's first formal level appeal response. ECF No. 198, AGO 029–30. Although Dr. Ahmed granted other requests in the appeal, he denied plaintiff's request for fact-acting insulin on the basis that plaintiff's dosage "is based on blood sugar level and or patient's presenting symptoms." *Id.* at AGO 029. Plaintiff did not further pursue the appeal. Opp. at 11.

On June 26, 2013, plaintiff filed appeal CTF-HC-13039189, in which he complained that the regimen change was "forc[ing] harm by high blood sugar levels and illness," listed his noon blood sugar readings, and requested a noon blood test. ECF No. 198 at AGO 102–04. The prison granted plaintiff a noon blood test. *Id.* at AGO 106. Plaintiff continued to request a change to his insulin dosage, *id.* at AGO 105, but the appeal was denied at the second level, *id.* at AGO 108, and at the Director's level. *Id.* at AGO 100. Plaintiff made similar Form 7362 requests complaining about his insulin dosage on May 28, June 2, June 22, and June 27. ECF Nos. 241-5, 241-6, 241-7, & 241-8.

Plaintiff made other diabetes treatment requests in 2013 and 2014. For example, in April 2013, plaintiff requested an on-person glucometer in formal appeal CTF-HC-13038910. ECF No.

198, AGO 131.  A glucometer "is a medical device for determining the approximate concentration of glucose in the blood"—in essence, a self-testing device.  ECF No. 238-1 ¶ 14.  CTF medical denied the request because CTF "does not provide individual blood tester[s] for diabetes" and inmates with diabetes "get their shots in the pill line window as nurse administered."  ECF No. 198, AGO 132.  Plaintiff was instructed to discuss any further concerns with Dr. Ahmed.  *Id.*  In May 2014, CCHCS denied the appeal at the Director's level because Dr. Ahmed "noted a glucometer was not medically indicated."  *Id.* at AGO 124.  Later, in January 2014, Dr. Kumar wrote in a note, "Please see if pt can get his own glucometer."  ECF No. 241-28.

In February 2014, plaintiff filed appeal CTF-HC-14040223.  ECF No. 198, AGO 062.  Plaintiff requested "rapid dose" insulin.  *Id.* at 064.  In CTF's first level response, Dr. Bright granted the request because plaintiff was currently receiving "short acting insulin."  *Id.* at AGO 069.  In a Director's level rejection, CCHCS explained that in August CTF had denied a request for the non-formulary drug Humalog.  *Id.* at AGO 059.  Humalog is an ultra-fast-acting insulin that takes effect about 15 minutes after injection.  ECF No. 238-7 ¶ 22.  By contrast, Regular insulin—a version of which is Humulin R— is a fast-acting insulin that takes effect about 30 minutes after injection.  *Id.*  In July 2014, Dr. Kumar recommended that plaintiff switch to Humalog, and Dr. Ahmed thus completed a request for Humalog.  ECF No. 198, AGO 049.  However, Humalog was a non-formulary medication not on CCHCS's pre-approved list, and its dispensation required Dr. Bright's approval.  *Id.*  Dr. Bright rejected the request on the basis that "humalog does not provide better control than humulin R [and] is more difficult to manage in prison."  *Id.*  Plaintiff grieved that decision in formal appeal CTF-HC-14040937.  *Id.* at AGO 045.  Dr. Bright denied plaintiff's second-level appeal because "[t]here is no medical evidence that Humalog is superior to Humulin R."  *Id.* at AGO 049.  Then, CCHCS cancelled the appeal at the Director's level because it was duplicative of appeal CTF-HC-14040223.  *Id.* at AGO 058.

Plaintiff also pursued appeals related to the correctional officers' conduct.  On July 17,

7

2013, plaintiff asserted in a CDCR Form 22 Request for Interview, Item or Service ("Form 22")
that on July 14, Officer Orozco had "disallowed" plaintiff from having his dinner at the scheduled
time. ECF No. 31-1 at 8. According to Officer Orozco's declaration in support of summary
judgment, on that day, patients in plaintiff's dorm were receiving medication at their cells. ECF
No. 238-11 ¶ 4. Plaintiff "began moving throughout the facility" while Officer Orozco was
distributing medication and refused Officer Orozco's order to stay in the dayroom. *Id.* at ¶¶ 5-6.
As a result, Officer Orozco locked plaintiff in his cell, but forgot to release plaintiff in time for his
dinner. *Id.* at ¶¶ 6-7. Once Officer Orozco realized his mistake, he ordered a diabetic snack for
plaintiff. *Id.* at ¶ 7. Plaintiff also later received a full meal. *Id.* ¶ 8. In a previous declaration,
Orozco attested that plaintiff received a meal in his cell after the diabetic snack. ECF No. 197-3
¶7. However, in his declaration attached to the instant motion, Orozco attests that he released
plaintiff to eat in the dining hall. ECF No. 238-11 at ¶ 8.

In a declaration, Plaintiff disputes whether he failed to comply with Officer Orozco's
order. ECF No. 241-34 at 5. Plaintiff also testified in a deposition that he was not released from
his cell until 6:00 a.m. the next morning and that he did not receive a meal. ECF No. 241-18 at
54:22-55:15. Plaintiff testified that as a result of missing dinner, he "became weak, shaky,
sweating." *Id.* at 56:14.

On August 6, in appeal CTF-S-13-01361, plaintiff requested an explanation for the meal
denial. ECF No. 76-2 at 10. The prison provided the above explanation from Officer Orozco and,
in response to plaintiff's claim that the incident "caused an emergency situation," noted that "there
is no documentation of a gurney or any medical issues for [plaintiff]" on that date. *Id.* at 16.

On September 7, 2013, plaintiff asked defendants Officer Gibson and Officer Orozco to
release him from his cell for a glucose test because he was worried that his blood sugar level was
too high. ECF No. 238-16 at 58:5–60:22-25. According to Officer Gibson's report on the
interaction, she called CTF medical and spoke to a licensed vocational nurse, who said that the

8

ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

"pill line"—where patients received their daily blood tests—could not perform a test without an order. ECF No. 241-32; *see also* ECF No. 238-16 at 61:2–3 (plaintiff's deposition testimony confirming same). Officer Gibson informed plaintiff that the pill line nurses were unable to provide a blood test. ECF No. 241-32. Then, according to plaintiff, "it became funny to Officer Orozco to tell me the LVN wouldn't help as he ignored my question all together." *Id.*

On September 9, 2013, according to plaintiff, he awoke "feeling sick, nausea, sluggish, and drained." ECF No. 241-30. Plaintiff informed Officer Lopez that he had an urgent need to see medical because his morning and noon blood tests indicated high blood sugar levels. *Id.* However, Officer Lopez made a phone call and told plaintiff that plaintiff could not get a pass to see medical because he did not have an appointment. *Id.* Officer Lopez testified that she did not recall those events. ECF No. 241-31 at 50:12-51:17.

On September 12, 2013, plaintiff made a Form 22 request for an explanation for the September 7 blood test denial. ECF No. 238-19 at 12. The prison explained that plaintiff "no longer ha[d] a prescription" for evening medication. *Id.* On September 30, 2013, in appeal CTF-HC-13039589, plaintiff raised the issue "access to medical clinic and RN denied by security officers Lopez, Orozco, Balli, Gibson when emergency declared." *Id.* Plaintiff asserted in his appeal that on September 7, he had requested a blood test from "medical," not the pill window. *Id.* at 9. The prison appeals coordinator forwarded the first level appeal to health care staff because an "appeal should be submitted to the appropriate CDCR unit for review." *Id.* at 10. Then, the health care appeals coordinator rejected the appeal for pertaining to both "custody and medical issues" and instructed to "[s]eparate your issues and resubmit health care issues." *Id.* at 20. In January 2014, health care staff rejected the appeal because it was not "a health care services issue." *Id.* at 3. The rejection informed plaintiff that if he wished to complain against the custody officers, he should submit Form 602 to the Inmate Appeals Office. *Id.*

Next, according to plaintiff, on September 16, 2013, Officer Lopez caused plaintiff to miss

9

a meal after plaintiff's counseling appointment ran longer than expected. ECF No. 241-37 at 2. Officer Lopez said that plaintiff could not enter Lassen Hall until the next release time, which was over two hours later. *Id.* When plaintiff protested that he needed food, Officer Lopez examined plaintiff's pockets, found a snack, and said "that's good enough." *Id.* According to Officer Lopez, she permitted all inmates returning from the yard to enter Lassen Hall between 11:45 and noon. ECF No. 197-4 at 17. Officer Lopez further testified that she did not deny plaintiff entry. ECF No. 241-31 at 66:7. Plaintiff filed appeal CTF-S-01831 to complain that Officer Lopez refused entry. *Id.* at 16. The prison denied the appeal on the basis that plaintiff was permitted to take his lunch with him to counseling. *Id.* at 17.

Next, according to plaintiff, on November 4, 2013, Officer Lopez refused to release plaintiff to receive a meal following his insulin injection. ECF No. 241-9 at 6. Due to a security issue, plaintiff was confined to his cell after receiving insulin. *Id.* Plaintiff explained his need for food to Officer Lopez, but she "laughed and smiled." *Id.* Officer Lopez testified that she did not recall the events, and that the interaction "did not take place." ECF No. 241-31 at 59:14-61:9. On November 6, 2013, plaintiff filed an appeal stating that Officer Lopez "denied a type one diabetic to eat dinner (after his shot) at 1600 hours." ECF No. 241-36 at 2. Plaintiff also noted that the issue was a "repeat." *Id.* at 4. The appeal was screened out as duplicative of CTF-S-01361, plaintiff's earlier appeal. *Id.* at 2.

Lastly, in April 2015, CTF medical denied plaintiff's request for bedtime regular insulin and for a nighttime blood sugar test. ECF No. 31-1 at 35. Dr. Kumar had recommended providing plaintiff bedtime Regular insulin on a sliding scale. *Id.* As a result, according to plaintiff, he was unable to "eat full, nutritious meals [like] other inmates." *Id.* at 51. Plaintiff further explained that without a nighttime blood test, he lacked a "check to verify safety" for a span of 15 hours. ECF No. 241-41. Plaintiff submitted at least eight Form 7362 requests during that period. ECF No. 241-42 at 5; *see, e.g.*, ECF No. 198, AGO 156 (Form 7362 request

10

complaining that "insulin to diabetic has been stopped").

Plaintiff filed several administrative appeals related to the April 2015 denial. In appeal CTF-HC-15042033, plaintiff complained that "by removal of medical care and treatment, food is denied" because he was "forced not to eat" to lower his blood sugar. ECF No. 241-45. In appeal CTF-HC-15042008, plaintiff complained that Dr. Bright "stopped a[n] insulin treatment designed by a CDCR employed endocrinologist" and asked the prison to "follow specialist orders to avoid harm." ECF No. 198, AGO 150. At the second level, CTF medical rejected the appeal because "[m]edical staff is under no obligation to provide treatment as ordered by another institution or outside facility or physician." *Id.* at AGO 155. Instead, CTF "provide[s] only medical services for patient-inmates that are based on medical necessity and supported by outcome data as effective medical care." *Id.* At the Director's level, CCHCS rejected plaintiff's request that "the specialist's orders are followed regarding insulin administration." *Id.* at AGO 148. CCHCS explained that "specialist providing consultation for your care are not able to and has not issued orders," and that "[h]ealth care providers will continue to confer with you and each other to provide appropriate medical care." *Id.*

In appeal CTF-HC-15042032, filed on April 24, 2015, plaintiff asserted that Dr. Bright had violated a California regulation by denying plaintiff's request for a nighttime blood test. *Id.* at AGO 169. Plaintiff's request was denied at the Director's level because "[m]edical needs and assessment techniques can and do change over time, and treatment may later be adjusted or changed by another provider." *Id.* at AGO 167.

**B. Procedural History**

Plaintiff, proceeding *pro se*, filed his original complaint on May 22, 2015. ECF No. 13. Plaintiff's original complaint raised 15 counts. *See id.* After screening the original complaint, the Court dismissed Counts 6–11 of the original complaint with leave to amend and Count 15 of the original complaint without leave to amend on September 18, 2015. ECF No. 28.

1    Then, on October 19, 2015, Plaintiff filed his amended complaint.  *See* ECF No. 31.

2  Plaintiff's amended complaint also raised 15 Counts.  *See id.*; ECF Nos. 31-1 & 31-2.  On

3  December 14, 2015, plaintiff filed a notice which stated that plaintiff "is being relocated [from

4  CTF] by way of a prison transfer" and which provided a new address.  ECF No. 41.  Then, on

5  February 1, 2016, plaintiff filed a "second notice" of change of address confirming that plaintiff

6  had been transferred from CTF to a different prison.  ECF No. 50.

7    On March 15, 2016, after screening the amended complaint, the Court dismissed Counts

8  10 and 15 in its order of service.  ECF No. 53 at 4.  On July 18, 2016, defendants moved to

9  dismiss Counts 1–9 and 11–13 based on res judicata, and Dr. Ahmed moved for summary

10  judgment on Counts 2 and 14.  ECF No. 90.  Plaintiff filed an opposition on September 6, 2016,

11  ECF No. 111, and defendants filed a reply on September 20, 2016.  ECF No. 114.

12    On May 23, 2016, plaintiff filed a motion for summary judgment on Counts 6–9.  ECF No.

13  76.  On July 19, 2016, defendants filed an opposition that essentially parroted their res judicata

14  argument on Counts 1–9 and 11–13, and summary judgment argument on Counts 2 and 14.  ECF

15  No. 95.

16    On July 29, 2016, plaintiff filed a motion for summary judgment on Counts 1–5 and 11–

17  14.  ECF No. 97.  On August 12, 2016, defendants filed a statement that their previously filed July

18  19, 2016 opposition should serve as an opposition to plaintiff's second motion for summary

19  judgment as well.  ECF No. 103.  On August 29, 2016, plaintiff filed replies to defendants'

20  opposition.  ECF Nos. 108 & 109.

21    On March 6, 2017, the Court denied defendants' motion to dismiss Counts 1–9 and 11–13

22  based on res judicata, granted Dr. Ahmed's motion for summary judgment on Counts 2 and 14,

23  and referred the matter to settlement proceedings.  ECF No. 151.  The Court informed the parties

24  that if settlement proceedings were unsuccessful, the Court would then resolve plaintiff's motions

25  for summary judgment.  *Id.* at 19.

26

Case No. 15-CV-01769-LHK
27  ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
   JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
28  DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
   JUDGMENT ON THE PLEADINGS

On May 11, 2017, the Court was informed that the parties were unable to settle. *See* ECF No. 165. On June 8, 2017, plaintiff filed a notice indicating that plaintiff had been transferred again, this time to Valley State Prison. ECF No. 175.

On September 26, 2017, the Court denied plaintiff's motions for summary judgment on Counts 1, 3–7, and 11–13. ECF No. 193 at 3. The Court declined to address Counts 8 or 9 because those Counts "name [Officer] Officer Lopez as the sole defendant," and at that time, Officer Lopez had not entered an appearance in the case. *Id*. Further, the Court ordered the Federal Pro Se Program to locate counsel for plaintiff. *Id*. at 14. On October 4, 2017, the Court appointed Joseph Farris and Michael Malecek of Arnold & Porter Kaye Scholer, LLP as counsel for plaintiff pursuant to 28 U.S.C. § 1915(e)(1) and the Court's Federal Pro Bono Project guidelines. ECF No. 195.

On October 9, 2017, defendants filed a motion to dismiss and for summary judgment. ECF No. 197. Defendants moved to dismiss some of plaintiff's claims on Eleventh Amendment immunity grounds, moved to dismiss plaintiff's request for injunctive relief on mootness grounds, and moved for summary judgment on all Counts. *See id.* On November 14, 2017, the Court denied defendant's motion to dismiss on Eleventh Amendment immunity grounds, and also denied defendants' motion for summary judgment on the basis that it was a successive motion for summary judgment. ECF No. 204. On January 19, 2018, the Court granted defendants' motion to dismiss plaintiff's request for injunctive relief on mootness grounds. ECF No. 218.

On November 21, 2017, defendants Dr. Bright, Ellis, Officers Gibson and Orozco, and Warden Spearman moved for leave to file a motion for reconsideration of the Court's denial of defendants' motion for summary judgment. ECF No. 206. Those defendants pointed out that they had only filed a single motion for summary judgment, and had not joined defendant Dr. Ahmed's motion for summary judgment of July 2016. *See* ECF No. 90. The Court concluded that defendants Dr. Bright, Ellis, Officer Orozco, Officer Gibson, Officer Lopez, and Warden

13

1  Spearman could collectively file one motion for summary judgment by August 3, 2018.  ECF No.

2  213.  The Court therefore denied as moot defendants' motion for leave to file a motion for

3  reconsideration.  *Id.*

4  Then, the Court referred the parties to Magistrate Judge Nathanael Cousins for a settlement

5  conference on February 27, 2018.  *See* ECF Nos. 219 & 225.  The parties failed to come to an

6  agreement at that conference.  The parties also failed to reach a settlement at further settlement

7  conferences on March 19, 2018 and March 23, 2018.  ECF Nos. 230 & 231.

8  On August 3, 2018, defendants Warden Spearman, Ellis, Dr. Bright, and Officers Orozco,

9  Gibson, and Lopez filed the instant motion for judgment on the pleadings and for summary

10  judgment.  ECF No. 238 ("Mot.").  Plaintiff filed an opposition on August 17, 2018, ECF No. 241

11  ("Opp."), and defendants filed a reply on August 24, 2018.  ECF No. 243 ("Reply").

12  In addition, on August 3, 2018, defendant Dr. Ahmed moved for leave to file a successive

13  motion for summary judgment.[1]  ECF No. 239.  On August 17, 2018, plaintiff filed a motion for

14  leave to file a late opposition to Dr. Ahmed's motion for leave to file a successive summary

15  judgment motion.  ECF No. 242.  Plaintiff attached to his motion for leave his proposed late

16  opposition to Dr. Ahmed's motion for leave.  ECF No. 242-2.

17  ## II.      LEGAL STANDARD

18  Summary judgment is proper where the pleadings, discovery, and affidavits show that

19  there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as

20  a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome of

21  the case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a

22  material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for

23

24  [1] The motion caption also lists all other defendants as movants. ECF No. 239 at 1. However, the
   motion concerns only whether *Dr. Ahmed* can file a successive summary judgment motion, as the

25  Court previously granted the other defendants permission to file a summary judgment motion.
   ECF No. 213.

26

Case No. 15-CV-01769-LHK

27  ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
   JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO

28  DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
   JUDGMENT ON THE PLEADINGS

the nonmoving party. *See id.*

The Court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *See id.* at 324 (internal quotations omitted).

For purposes of summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The Court evaluates a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) under the same standard as that used for Rule 12(b)(6). *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). Therefore, the Court accepts all factual allegations in the complaint as true and takes all inferences in the nonmoving party's favor. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## III. DISCUSSION

### A. Dr. Ahmed's second summary judgment motion

15

Case No. 15-CV-01769-LHK
ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

United States District Court
Northern District of California

At the outset, the Court must consider whether to grant Dr. Ahmed leave to file a second summary judgment motion and whether to grant plaintiff leave to oppose Dr. Ahmed's motion for leave. The Court will grant both motions. The Court considers first plaintiff's motion for leave to file a late opposition to Dr. Ahmed's motion for leave to file a second summary judgment motion.

Plaintiff failed to oppose Dr. Ahmed's administrative motion for leave within the required four days. *See* Civil Local Rule 7-11(b). "To determine whether a party's failure to meet a deadline constitutes 'excusable neglect,' courts must apply a four factor test, examining: (1) the danger of prejudice to the opposing party; (2) the length of the delay and its potential impact on the proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1261 (9th Cir. 2010). In this case, plaintiff's counsel, who is litigating the case pro bono, attests that he missed the deadline to oppose Dr. Ahmed's motion for leave due to a calendaring error. ECF No. 242-1. The Court concludes that plaintiff's counsel's failure constitutes excusable neglect. As to the first two factors, the length of the delay was ten days and, because the Court has not yet ruled on Dr. Ahmed's motion for leave or his proposed motion for summary judgment, there is little danger of prejudice to Dr. Ahmed if the Court permits plaintiff to file a late opposition. Moreover, plaintiff's counsel attests that he made a good-faith calendaring error; thus the third and fourth factors also weigh in favor of granting plaintiff's motion for leave. *See Pincay v. Andrews*, 389 F.3d 853, 855, 859 (9th Cir. 2004) (en banc) (concluding that district court did not abuse its discretion in excusing attorney's 24-day filing delay due to a calendaring error). The Court considers plaintiff's late opposition to Dr. Ahmed's motion for leave. *See* ECF No. 242-2.

"[D]istrict courts have discretion to entertain successive motions for summary judgment." *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010). Although a court "retain[s] discretion to 'weed out frivolous or simply repetitive motions,'" the filing of a second motion for summary judgment can encourage the efficient resolution of lawsuits. *Id.* (quoting *Knox v.*

16

Case No. 15-CV-01769-LHK
ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

1   *Southwest Airlines*, 124 F.3d 1103, 1106 (9th Cir. 1997)).  Dr. Ahmed's proposed second

2   summary judgment motion relies on the same evidence and same legal arguments as the other

3   defendants' summary judgment motion.  *Compare, e.g.*, ECF No. 239-1 at 17 *with* ECF No. 238 at

4   5.  Thus, allowing Dr. Ahmed to file his second summary judgment motion promotes judicial

5   efficiency.  Moreover, permitting Dr. Ahmed to file his motion will not prejudice plaintiff, who

6   responded to Dr. Ahmed's proposed arguments in his brief opposing the other defendants' motion.

7   Opp. at 4.  Dr. Ahmed's motion is also not frivolous or repetitive.  His previous summary

8   judgment motion addressed only Counts 2 and 14, which are not at issue in the instant motion, and

9   his legal arguments have a basis in the relevant law.  *See* ECF No. 90.

10      Accordingly, the Court GRANTS Dr. Ahmed's motion for leave to file a second motion

11  for summary judgment.

12      **B. Motion for judgment on the pleadings**

13      In their motion for judgment on the pleadings, defendants contend that the Eleventh

14  Amendment bars plaintiff's claims for money damages against defendants in their official

15  capacities.  Mot. at 19.  However, as the Court has already stated in a previous order, defendants

16  failed to raise the Eleventh Amendment immunity defense in their opening motion to dismiss

17  under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 204 at 4.  Under Federal Rule of Civil

18  Procedure 12(g)(2), if a party omits an affirmative defense—other than the defense of a lack of

19  subject-matter jurisdiction—from an earlier Rule 12 motion, the party may not in a subsequent

20  motion raise that defense.  Eleventh Amendment immunity "does not implicate a federal court's

21  subject matter jurisdiction in any sense" and thus "should be treated as an affirmative defense."

22  *Tritchler v. County of Lake*, 358 F.3d 1150, 1153–54 (9th Cir. 2004) (quoting *ITSI TV Prods., Inc.*

23  *v. Agric. Ass'ns*, 3 F.3d 1289, 1291 (9th Cir. 1993)).  Accordingly, Rule 12(g)(2) prevents the

24  Court's consideration of defendants' Eleventh Amendment affirmative defense.  *See also Demshki*

25  *v. Monteith*, 255 F.3d 986, 989 (9th Cir. 2001) (Eleventh Amendment immunity is an affirmative

26  

27  Case No. 15-CV-01769-LHK
    ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
    JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO

28  DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
    JUDGMENT ON THE PLEADINGS

defense "that must be raised early in the proceedings to provide fair warning to the plaintiff," or else can be waived) (internal quotation marks and citation omitted). The Court thus DENIES defendants' motion for judgment on the pleadings.

## C. Exhaustion

### 1. Legal standard

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 28 U.S.C. § 1997e(a). Failure to exhaust is an affirmative defense under the PLRA. *Jones v. Bock*, 549 U.S. 199, 211 (2007). Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints. *Id.* at 215–17. Defendants are entitled to summary judgment if the undisputed record evidence proves that the prisoner failed to exhaust his available administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc). If defendant meets that burden, the burden shifts to the prisoner to show that there is "something in his particular case that made the existing and generally available remedies effectively unavailable to him." *Id.* at 1172.

"Exhaustion requires complying with an agency's 'critical procedural rules,' and it is justified by the agency's need to 'impos[e] some orderly structure on the course of its proceedings.'" *Fuqua v. Ryan*, 890 F.3d 838, 844 (9th Cir. 2018) (alteration in original) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)). A prisoner is only required to exhaust "available" administrative remedies. *See* 42 U.S.C. § 1997e(a). An administrative remedy may be unavailable if the procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" is "so opaque that it becomes, practically speaking, incapable of use;" or "prison administrators thwart inmates from taking advantage of a

18

1    grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.

2    Ct. 1850, 1859–60 (2016).

3          As explained above, CDCR provides its inmates and parolees the right to appeal

4    administratively "any policy, decision, action, condition or omission by the department or its staff

5    that the inmate or parolee can demonstrate as having a material adverse effect upon his or her

6    health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). In order to exhaust available

7    administrative remedies within this system, a prisoner must submit his complaint on Form 602 and

8    proceed through several levels of appeal: (1) informal level grievance filed directly with any staff

9    member, (2) first formal level appeal filed within one of the institution's appeal coordinators, (3)

10   second formal level appeal filed with the institution head or designee, and (4) Director's level

11   appeal filed with the CDCR director or designee. Cal. Code Regs. tit. 15, § 3084.5. Completion

12   of that procedure satisfies the administrative remedies exhaustion requirement under the PLRA.

13   *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

14         **2. Analysis**

15         Defendants move for summary judgment on Counts 1, 3–6, 8, and 11–13 on the grounds

16   that plaintiff failed to exhaust his administrative remedies. Mot. at 22. Defendants do not contend

17   that plaintiff failed to exhaust his administrative remedies for Counts 7 and 9. The Court

18   considers each Count in turn.

19         **a. Count 1**

20         In Count 1, plaintiff alleges that defendant Dr. Ahmed violated the Eighth Amendment by

21   altering plaintiff's insulin regimen in May 2013. ECF No. 31 at 17. Defendants contend that

22   plaintiff failed to exhaust his administrative remedies on Count 1 because plaintiff failed to appeal

23   CTF-HC-23039056 to the Director's level. Mot. at 7. In that appeal, plaintiff explained that Dr.

24   Ahmed had changed his insulin regimen on May 23 and requested several treatment changes,

25   including the daily use of fast-acting insulin. ECF No. 198, AGO 027–28. Dr. Ahmed denied the

26                                              19

Case No. 15-CV-01769-LHK
ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

appeal at the first level. *Id.* at AGO 029. Plaintiff concedes that he failed to appeal the denial to the Director's level, but contends that further appeal was "unavailable" because the CCHCS Appeals Office delayed nearly six months in returning his appeal. Opp. at 11. The record indicates that on three occasions, the Appeals Office informed plaintiff that its response to the appeal would be delayed due to the "[c]omplexity of the decision action or policy, requiring additional research." ECF No. 241-24 at 3–5.

That delay alone did not render plaintiff's administrative remedies unavailable. Ordinarily, the Appeals Office must complete its first level review of an appeal "within 30 working days of receipt by the appeals coordinator." Cal. Code. Regs., tit. 15, § 3084.8(c)(1). However, there are exceptions to those time limits. One such exception permits extension of the time limits based on "[t]he complexity of the decision, action, or policy requiring additional research." *Id.* at § 3084.8(d)(2). The Appeals Office used that precise language in each letter notifying plaintiff of its processing delays. *See* ECF No. 241-24 at 3–5. Thus, plaintiff's claim that defendants "improperly fail[ed] to process [his] grievance" is without merit. Opp. at 11 (citing *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) (per curiam)). In *Andres*, for example, the prison failed entirely to process the California prisoner's 602 Form, *id.* at 1078, but that is not the case here.

Plaintiff's attempted reliance on *Brown v. Valoff*, 422 F.3d 926 (9th Cir. 2005), is also misplaced. In *Brown*, the Ninth Circuit explained that "[d]elay in responding to a grievance, particularly a time-sensitive one, may demonstrate that no administrative process is in fact available." *Id.* at 943 n.18. However, *Brown* held that the plaintiff's administrative remedies were available because nothing in the record suggested that the plaintiff was "prejudiced by the long time it took to conclude the investigation into his staff complaint." *Id.* The other circuit court cases cited in *Brown* shed light on the meaning of "prejudice." For example, in *Foulk v. Charrier*, 262 F.3d 687 (8th Cir. 2001), the Eighth Circuit concluded that a prison's failure to respond to

20

prisoner's informal request, which precluded him from filing an administrative appeal, rendered administrative remedies unavailable. *Id.* at 698; *see also Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citing cases for the proposition that the "failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable").

In this case, the CDCR appeals process did not "operate as a simple dead end." *Ross*, 136 S. Ct. at 1859. The Appeals Office's delays may have frustrated plaintiff, but unlike the plaintiffs in *Andres* and *Foulk*, plaintiff was not in fact prevented from pursuing his administrative remedies. It was plaintiff who chose not to pursue his remedies to the Director's level. Thus, plaintiff did not exhaust his administrative remedies on Count 1. Accordingly, the Court GRANTS defendants' motion for summary judgment on Count 1 on non-exhaustion grounds.

### b. Count 3

In Count 3, plaintiff alleges that defendants Ellis and Dr. Bright violated the Eighth Amendment by denying plaintiff's request for fast-acting Humalog insulin. ECF No. 31 at 39–40. Defendants contend that plaintiff failed to exhaust his administrative remedies on this Count because in appeal CTF-HC-14040937, plaintiff requested Humalog, but did not mention Ellis or Dr. Bright by name. Mot. at 8. CCHCS cancelled appeal CTF-HC-14040937 at the Director's level as duplicative of appeal CTF-HC-14040223. ECF No. 198, AGO 058. However, plaintiff pursued appeal CTF-HC-14040223 to the Director's level, where CCHCS addressed and denied plaintiff's request for Humalog insulin. *Id.* at AGO 059–60.

Moreover, plaintiff was not required to name Ellis and Dr. Bright in his appeals to exhaust his administrative remedies. Prisoners are instructed to "list all staff member(s) involved and . . . describe their involvement in the issue" when completing a 602 Form. Cal. Code Regs. tit. 15, § 3084.2(a)(3). However, if a prisoner does not know the staff member's name, "he or she shall provide any other available information that would assist the appeals coordinator in making a

21

reasonable attempt to identify the staff member(s) in question." *Id.* The PLRA itself imposes no "'name all defendants' requirement.'" *Jones*, 549 U.S. at 217; *see also Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation.").

The Ninth Circuit addressed and rejected an argument similar to defendants' in *Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010). In *Sapp*, the Ninth Circuit pointed to the language of the relevant CDCR regulation, which then required an inmate to "describe the problem and the action requested," and thus concluded that "[a] grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Id.* at 824. The *Sapp* Court therefore concluded that the plaintiff "was not required to identify [defendant] by name to exhaust the grievance against him." *Id.* The language of the regulation has changed slightly—now an inmate must "describe the specific issue under appeal and the relief requested," Cal. Code Regs., tit. 15, § 3084.2(a)—but its basic thrust remains the same. The Court continues to follow *Sapp*.

Moreover, to the extent that defendants argue that plaintiff must exhaust his remedies against each individual defendant, this Court has previously held in analogous circumstances that a plaintiff need not separately exhaust administrative remedies against a supervisory official if the plaintiff has already exhausted the same grievance. *Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1154 (N.D. Cal. 2014). In *Gonzalez*, this Court concluded that whether a supervisory official "was aware of this alleged inadequate treatment but denied [p]laintiff access to a different physician" or otherwise failed to intervene is "directly related" to the plaintiff's claim against the treating physician, which the plaintiff had exhausted. *Id.* Therefore, plaintiff need not separately exhaust his claims against supervisory defendants like Ellis and Spearman.

Here, the Director's level denial of plaintiff's appeal CTF-HC-14040223 addressed plaintiff's request for Humalog insulin. ECF No. 198, AGO 059. The prison was thus "on

22

ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

adequate notice of the problem for which the prisoner seeks redress." *Sapp*, 623 F.3d at 824.

Accordingly, the Court DENIES defendants' motion for summary judgment on Count 3 on non-

exhaustion grounds.

### c. Count 4

In Count 4, plaintiff alleges that defendants Dr. Ahmed, Ellis, and Warden Spearman

violated the Eighth Amendment by failing to treat ketoacidosis that plaintiff developed after Dr.

Ahmed changed plaintiff's insulin regimen. ECF No. 31 at 43-44. Defendants contend that

plaintiff failed to exhaust this claim because appeal CTF-HC-13039189 does not specifically refer

to ketoacidosis. Mot. at 10. The appeal frames the issue as "insulin limits by Dr. Ahmed force

harm by high blood sugar levels and illness" and "sugar raise creates harm - leads to death." ECF

No. 198, AGO 102–03. Plaintiff contends that his statements "precisely described" ketoacidosis.

Opp. at 15. Elevated blood sugar levels can cause ketoacidosis. ECF No. 241-47 ¶ 30. At the

least, plaintiff's appeal was more than sufficient to advise the prison that plaintiff was complaining

about health deterioration due to the insulin regimen change, which is the basis for Count 4.

Plaintiff therefore "put the prison on adequate notice of the problem for which [he sought]

redress." *Sapp*, 623 F.3d at 824.

Defendants contend that plaintiff did not exhaust against Ellis and Warden Spearman

because CTF-HC-13039189 did not mention them. Mot. at 10. For the reasons articulated in the

discussion of Count 3, plaintiff was required to identify his problem and the relief requested, not

to name all individual defendants. Accordingly, the Court DENIES defendants' motion for

summary judgment on non-exhaustion grounds.

### d. Count 5

In Count 5, plaintiff alleges that defendants Ellis, Warden Spearman, and Dr. Ahmed

violated the Eighth Amendment by denying plaintiff's request for an on-person glucometer. ECF

No. 31 at 50–51. Defendants again contend that plaintiff failed to exhaust administrative remedies

Case No. 15-CV-01769-LHK
ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

because he did not specifically name any of the defendants or allege that Dr. Ahmed "authored the policy" related to glucometers. Mot. at 12. For the reasons articulated in the discussion of Count 3, plaintiff was required to identify his problem and the relief requested, not to name all individual defendants. In appeal CTF-HC-13038910, which plaintiff pursued through the Director's level, plaintiff requested an on-person glucometer. ECF No. 198, AGO 124. That denial is the basis for Count 5. Plaintiff thus "put the prison on adequate notice of the problem for which [he sought] redress." *Sapp*, 623 F.3d at 824. Accordingly, the Court DENIES defendants' motion for summary judgment on Count 5 on non-exhaustion grounds.

### e. Count 6

In Count 6, plaintiff alleges that in separate incidents in September 2013, defendants Officer Lopez, Officer Gibson, and Officer Orozco denied him access to medical care. ECF No. 31 at 56–58. Defendants contend plaintiff failed to exhaust this claim because although plaintiff raised the issue in appeal CTF-HC-13038959, plaintiff did not appeal the denial to the Director's level. Mot. at 13. Plaintiff contends that defendants conceded exhaustion of this claim in their first attempted motion for summary judgment. Opp. at 18; *see* ECF No. 197 at 20:22–23. The law of the case doctrine, although discretionary, "generally precludes a court from reconsidering an issue decided previously by the same court or a higher court in the identical case." *Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012). "The issue in question must have been decided explicitly or by necessary implication in the previous disposition." *Id.* The Court did not rule on exhaustion in its prior order. ECF No. 204 at 6. Thus, because the Court did not decide the issue in any of its previous orders, the Court will consider defendants' exhaustion argument.

Plaintiff concedes non-exhaustion, but contends that administrative remedies were unavailable because of a "four month delay and bureaucratic runaround." Opp. at 18. In appeal CTF-HC-13039589, plaintiff raised the issue "access to medical clinic and RN denied by security officers Officer Lopez, Officer Orozco, Balli, Officer Gibson when emergency declared." ECF

24

No. 238-19 at 6. Plaintiff asserted "diabetes is critical care and needs are a medical necessity." *Id.* at 8. The prison appeals coordinator forwarded the first level appeal to health care staff because an "appeal should be submitted to the appropriate CDCR unit for review." *Id.* at 10. Then, the health care appeals coordinator rejected the appeal for pertaining to both "custody and medical issues" and instructed plaintiff to "[s]eparate your issues and resubmit health care issues." *Id.* at 20. In January 2014, health care staff rejected the appeal because it was not "a health care services issue." *Id.* at 3. The rejection informed plaintiff that if he wished to complain about the custody officers, he should submit Form 602 to the Inmate Appeals Office. *Id.* Plaintiff does not point to any evidence that he did so.

To support his argument that administrative remedies were unavailable to him, plaintiff cites only to *Williams v. Paramo*, 775 F.3d 1182 (9th Cir. 2015), in which the Ninth Circuit held that administrative remedies were unavailable because correctional officers refused to accept a prisoner's attempted grievance and his subsequent appeal. *Id.* at 1191–92. *Williams* only demonstrates how plaintiff has failed to carry his burden. The *Williams* plaintiff attempted to file an appeal, but a custody officer "refused to file the appeal." *Id.* at 1192. By contrast, CTF permitted plaintiff to file his appeal, but eventually instructed him to separate the health care and custody staff issues. Plaintiff has not shown that after that direction, he filed an appeal with the Inmate Appeals Office. If plaintiff had followed the prison's directions, but his appeal was still rejected, his case would be closer to *Williams*. Plaintiff has not shown that the delay in responding to his grievance rendered administrative remedies unavailable. *See also Wilson v. Zubiate*, 718 F. Appx. 479, 481–82 (9th Cir. 2017) (rejecting the contention that CDCR's invocation of a procedural bar to reject rather than consider the merits of a plaintiff's grievance rendered administrative remedies unavailable).

Accordingly, the Court GRANTS defendants' motion for summary judgment on Count 6 on non-exhaustion grounds.

25

### f. Count 8

In Count 8, plaintiff alleges that in November 2013, Officer Lopez prevented plaintiff from eating dinner after plaintiff had received insulin. ECF No. 31-1 at 10–12. Defendants contend that plaintiff failed to exhaust his appeal raising this issue. Mot. at 15. On November 6, 2013, plaintiff filed an appeal stating that on November 4, Officer Lopez "denied a type one diabetic to eat dinner (after his shot) at 1600 hours." ECF No. 241-36 at 2. Plaintiff noted that the issue was a "repeat." *Id.* at 4. The prison rejected the appeal as duplicative of CTF-S-01361. *Id.* at 2. That earlier appeal concerned only Officer Orozco's conduct, which is the basis of Count 7. *See* ECF No. 76-2 at 10 (CTF-S-01361 appeal complaining that Officer Orozco denied plaintiff a meal in July 2013). As a result, plaintiff contends that the prison's "[i]mproper screening" of plaintiff's second, Officer Lopez-focused appeal rendered administrative remedies effectively unavailable. Opp. at 20. Defendants' only reply is that plaintiff alleged in his amended complaint that he exhausted Count 8 via CTF-S-01361. Reply at 13. However, plaintiff has no obligation to plead exhaustion of administrative remedies; the burden is on defendants to show that plaintiff did not exhaust. *Albino*, 747 F.3d at 1166. The burden then shifts to plaintiff to show that administrative remedies were "effectively unavailable." *Id.* at 1172. On Count 8, plaintiff has at least raised a genuine dispute of material fact regarding whether administrative remedies were effectively unavailable. Plaintiff showed that he complained about Officer Lopez's conduct, but that the prison screened it out as duplicative of plaintiff's prior appeal concerning a *different officer*. The record permits the inference that the prison's screening was improper and prevented plaintiff from pursuing his appeal of Officer Lopez's conduct, such that "administrative remedies [were] therefore plainly unavailable." *Sapp*, 623 F.3d at 823.

Accordingly, the Court DENIES defendants' motion for summary judgment on Count 8 on non-exhaustion grounds.

### g. Counts 11–13

26

Plaintiff's allegations in Counts 11–13 relate to defendants' April 2015 denial of bedtime insulin and bedtime blood sugar monitoring. *See* ECF No. 31-1 at 35, 45–46, 51–52. Although plaintiff's amended complaint raises other factual allegations under those Counts, plaintiff explains in his opposition brief that Counts 11–13 all arise from the denial of bedtime insulin and blood tests. Opp. at 21. Thus, the factual issues relevant to defendants' non-exhaustion arguments are common across all three Counts, and the Court considers those arguments as a group.

Defendants contend only that plaintiff did not exhaust his remedies as to certain defendants because appeals CTF-HC-15042008 and CTF-HC-15042033 did not identify the defendants by name. Mot. at 16–18. Defendants concede, however, that plaintiff exhausted his administrative remedies against other defendants. *See, e.g.*, Mot. at 16 (conceding that plaintiff exhausted Count 11 against Dr. Ahmed, but arguing that it was not exhausted against Ellis). For the reasons articulated in the discussion of Count 3, plaintiff was required to identify his problem and the relief requested, not to name all individual defendants. On reply, defendants continue to contend that because Ellis had no notice of plaintiff's administrative appeals, plaintiff failed to exhaust his remedies against Ellis. Reply at 14. However, the Ninth Circuit's decision in *Sapp*, and this Court's discussion of *Sapp* in *Gonzalez*, foreclose defendants' argument. "A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress." *Sapp*, 623 F.3d at 824. If the prison is on notice, the plaintiff need not have named all individual defendants, as allegations against supervisory defendants are "encompassed within [plaintiff's] original grievance." *Gonzalez*, 67 F. Supp. 3d at 1154. Defendants point to no case law supporting their theory of defendant-by-defendant exhaustion.

Here, plaintiff filed appeal CTF-HC-15042008 after Dr. Bright rejected Dr. Kumar's recommendation that plaintiff receive sliding scale bedtime insulin and a bedtime blood sugar test. *See* ECF No. 31-1 at 35. In that appeal, plaintiff complained that Dr. Bright "stopped a[n] insulin treatment designed by a CDCR employed endocrinologist" and asked the prison to "follow

27

specialist orders to avoid harm." ECF No. 198, AGO 150. In appeal CTF-HC-15042032, plaintiff asserted that Dr. Bright had violated a California regulation by denying plaintiff's request for a nighttime blood test. *Id.* at AGO 169. Both of plaintiff's requests were considered and denied at the Director's level, as defendants concede. *Id.* at AGO 148, 167. Defendants therefore have not shown that plaintiff failed to exhaust his administrative remedies. Accordingly, the Court DENIES defendants' motion for summary judgment on Counts 11–13 on non-exhaustion grounds.

In sum, the Court grants defendants' motion for summary judgment on non-exhaustion grounds on Counts 3 and 6 only. The Court next addresses defendants' motion for summary judgment on the merits of the remaining claims, Counts 1, 4–5, 7–9, and 11–13.

**D. Deliberate Indifference**

**1. Legal standard**

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Insulin-dependent Type 1 diabetes is a serious medical condition for purposes of Eighth Amendment analysis. *Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003). The failure to provide a person suffering from Type 1 diabetes with necessary food or insulin creates a serious risk of harm. *Id.* at 419–20.

28

To satisfy the second element of deliberate indifference, a prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Farmer*, 511 U.S. at 837. Consequently, in order for deliberate indifference to be established, plaintiff must show that defendant purposefully acted or failed to act, and that harm resulted. *See McGuckin*, 974 F.2d at 1060. A claim of medical malpractice or negligence is insufficient to establish a violation of the Eighth Amendment. *Id.* at 1059. Nor do disagreements in medical opinion suffice to show deliberate indifference. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment was 'medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health." *Id.* (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (alteration in original)).

Supervisory officials are not subject to vicarious liability under § 1983. *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). A prison official in a supervisory position may be held liable under § 1983, however, "'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'" *Lemire v. Cal. Dep't of Corrs. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013) (quoting *Lolli*, 351 F.3d at 418). A prisoner may demonstrate such a causal connection via evidence of the supervisor's "culpable action or inaction in the training, supervision, or control of subordinates; acquiescence in a constitutional violation; or "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1075 (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1292 (9th Cir. 2000)).

### 2. Analysis

Defendants move for summary judgment on plaintiff's remaining causes of action, Counts 1, 4–5, 7–9, and 11–13. Plaintiff has filed an opposition, and defendants have filed a reply. The

29

1  Court views the facts in the light most favorable to plaintiff, the non-moving party, and addresses

2  plaintiff's causes of action in order.

3      **a.  Count 3**

4      In Count 3, plaintiff alleges that defendants Ellis and Dr. Bright violated the Eighth

5  Amendment by denying plaintiff's request for fast-acting Humalog insulin.  ECF No. 31 at 39–40.

6  In July 2014, Dr. Kumar recommended plaintiff switch to Humalog, and Dr. Ahmed thus

7  completed a request for Humalog.  ECF No. 198, AGO 049.  However, Humalog was a non-

8  formulary medication not on CCHCS's pre-approved list, and its dispensation required Dr.

9  Bright's approval.  *Id.*  Dr. Bright rejected the request on the basis that "humalog does not provide

10  better control than humulin R [and] is more difficult to manage in prison."  *Id.*

11      Defendants contend that summary judgment is warranted because Dr. Bright thought it was

12  medically appropriate not to prescribe Humalog insulin in a prison setting.  Mot. at 8.

13  Specifically, because Humalog is an "ultra-fast-acting" insulin that takes effect in about 15

14  minutes, a patient must receive it shortly before food is consumed.  ECF No. 238-4 ¶ 5.  If a

15  patient is unable to consume food in that time, then the patient is at risk of hypoglycemia.  *Id.* at ¶

16  5.  Patients in a correctional setting do not self-inject insulin and cannot control when they eat

17  meals.  *Id.* at ¶ 6.  According to Dr. Bright, Regular insulin, which takes effect in about 30

18  minutes, thus "provides an inmate with more time to consume food and avoid the risks of

19  Humalog-induced hypoglycemia."  *Id.*  Defendants' expert Dr. Fitzgerald affirmed that "timing is

20  crucial with Humalog insulin."  ECF No. 238-7 ¶ 23.

21      In response, plaintiff contends that patient-prisoners may also be unable to eat within thirty

22  minutes after a Regular insulin injection.  Opp. at 13.  Moreover, plaintiff's expert Dr. Koliwad

23  testified that after an injection of Regular insulin, "[t]he hypoglycemia, once it develops, is more

24  profound and more sustained and more difficult to contend with."  ECF No. 241-23 at 62:7-8.  As

25  a result, Dr. Koliwad thought "it would have been useful" for the prison to give plaintiff Humalog

26                                          30

27  Case No. 15-CV-01769-LHK
    ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
    JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
28  DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
    JUDGMENT ON THE PLEADINGS

insulin. *Id.* at 38:4-8. However, Dr. Koliwad's difference of opinion alone is not sufficient to survive summary judgment. *See Colwell v. Bannister*, 763 F.3d 1060, 1068 (9th Cir. 2014) ("A difference of opinion . . . between medical professionals [] concerning what medical care is appropriate does not amount to deliberate indifference.") (internal citation omitted). Instead, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." *Id.* (internal citations and quotation marks omitted).

For example, in *Colwell*, the record indicated that the prison "ignored the recommendations of treating specialists and instead relied on the opinions of non-specialist and non-treating medical officials who made decisions based on an administrative policy" to deny cataract surgery for any prisoner with one "good" eye. *Id.* at 1069. Here, although Dr. Bright disagreed with the prescription of Humalog, there is no evidence that Dr. Bright did so on the basis of an administrative policy or any other medically unacceptable reason. Instead, Dr. Bright denied the request because "[H]umalog does not provide better control then humulin R [and] is more difficult to manage in prison" [sic]. ECF No. 198, AGO 049.

Plaintiff's further contention that the prison denied him Humalog insulin solely because it was a "non-formulary" medication is not supported by the record. *See* Opp. at 13. Dr. Bright must approve all requests for non-formulary medications, which are those medications that CDCR has not already approved for dispensation. ECF No. 238-4 ¶ 2; ECF No. 198, AGO 049. Dr. Bright's denial of a non-formulary medication request, without more, does not permit the inference that he did so *because* it was a non-formulary medication. Plaintiff thus has not raised a genuine dispute of material fact as to whether defendants' reasons for denying Humalog insulin were medically unacceptable.

Accordingly, the Court GRANTS defendants' motion for summary judgment on Count 3.

**b. Count 4**

31

Case No. 15-CV-01769-LHK
ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

In Count 4, plaintiff alleges that defendants Dr. Ahmed, Ellis, and Warden Spearman failed to treat plaintiff's ketoacidosis. ECF No. 31 at 43-44. Specifically, plaintiff alleges that after defendants changed plaintiff's insulin regimen in May 2013, defendants became aware that plaintiff's "life [was] in danger" but continued to deny him mealtime insulin. *Id.* at 44.

First, defendants contend that plaintiff has not put forth evidence that he suffered from ketoacidosis or that defendants were aware that he had ketoacidosis. Mot. at 9. Defendants contend that they never tested for ketoacidosis because plaintiff never had symptoms that would require a test. *Id.* at 10. As explained above, ketoacidosis is a very serious state associated with prolonged hyperglycemia. *See* ECF No. 238-7 ¶¶ 21-22. Symptoms include "severe fatigue, inability to walk, vomiting, abdominal pain, fruity odor of breath, difficulty breathing, confusion, and loss of consciousness." *Id.* at ¶ 20. Plaintiff asserts that he suffered from several such symptoms, ECF No. 241-16 at 5:6-9, but does not identify record evidence that defendants noticed any symptoms of ketoacidosis.

However, plaintiff contends that his elevated blood sugar levels made defendants aware of his serious medical needs. Opp. at 15. Plaintiff points to evidence that on several days after his insulin regimen was altered, his blood sugar levels exceeded 400 mg/dL. *See, e.g.*, ECF No. 241-15 (chart showing that plaintiff's blood sugar levels exceeded 400 mg/dL on June 24, June 26, and June 28). Dr. Ahmed testified that if an inmate's blood sugar levels exceeded 400 mg/dL, the prison's protocol was to conduct a urine test for ketone bodies to determine if the inmate had a risk of ketoacidosis. ECF No. 241-21, 20:25-21:2-5. Yet no CTF medical staff person ever conducted a ketone urine test on plaintiff despite his elevated readings. Dr. Ahmed testified that "there was no reason to even test for ketoacidosis because [plaintiff's] vital signs and heart rate were regularly taken while at CTF and were within the normal ranges." ECF No. 241-1 ¶ 13. Yet on summary judgment, the question is whether plaintiff has "evidence from which a reasonable jury could conclude that any of the [defendants] knew of . . . [a] substantial risk of serious harm

32

[plaintiff] faced if not properly treated." *Lolli*, 351 F.3d at 420 (denying summary judgment where plaintiff testified that he had told officers he suffered from diabetes and required food). Given that the prison had a protocol to conduct a urine test for ketone bodies when an inmate's blood sugar levels exceeded 400 mg/dL, a reasonable jury could find that Dr. Ahmed, plaintiff's primary care physician, was aware of patient's serious medical needs.

Second, defendants contend that "even if . . . [plaintiff] suffered from ketoacidosis during the relevant period," Ellis and Warden Spearman were not deliberately indifferent. Mot. at 10. Plaintiff does not specifically respond to defendants' contention. *See* Opp. at 14–15. Elsewhere in his brief, plaintiff contends that Ellis and Warden Spearman "could have ordered Defendant physicians to re-evaluate [plaintiff's] care, consult an endocrinologist, or provide external emergency medical care." Opp. at 12. Defendants offer evidence that neither Warden Spearman nor Ellis was ever aware of plaintiff's medical treatment. *See* ECF No. 238-6 at ¶¶ 4-5; ECF No. 238-20 at ¶¶ 4-5. Plaintiff does not identify any contrary evidence. The mere fact that Ellis "provided administrative leadership and support for [p]laintiff's physician," ECF No. 197-1, ¶ 24, does not raise the inference of a causal connection between plaintiff's treatment and Ellis's actions or inaction. Plaintiff thus has not raised a genuine dispute of material fact as to whether either Ellis or Warden Spearman was deliberately indifferent. *See Lemire*, 726 F.3d at 1075 (a prisoner may establish supervisory liability via evidence of the supervisor's involvement in training, acquiescence in a violation, or own callous indifference).

Accordingly, the Court DENIES Dr. Ahmed's motion for summary judgment on Count 4, but GRANTS Warden Spearman and Ellis's motion for summary judgment on Count 4.

### c. Count 5

In Count 5, plaintiff alleges that defendants Dr. Ahmed, Ellis, and Warden Spearman violated the Eighth Amendment by denying plaintiff's request for an on-person glucometer. ECF No. 31 at 50–51. For the reasons stated in the discussion of Count 4, Ellis and Warden Spearman

United States District Court
Northern District of California

are entitled to summary judgment on this Count because plaintiff offers no evidence of any connection between their actions or inactions and plaintiff's treatment.

Dr. Ahmed denied plaintiff's request for an on-person glucometer, a device used to self-test a patient's blood sugar levels, because one "was not medically indicated." ECF No. 198, AGO 124. At the time, CTF medical "did not have a policy of providing inmates with their own glucometers." ECF No. 240 ¶ 13 (declaration of Dr. Posson, the Chief Medical Executive at CTF). Defendants contend that Dr. Ahmed's decision was medically appropriate. Mot. at 11. According to Dr. Posson, "during the period in question, it was not common practice to provide inmates with glucometers because there was a lack of medical evidence demonstrating their necessity in a correctional setting." ECF No. 240 ¶ 13. Defendants' expert Dr. Fitzgerald attested that in the correctional setting, plaintiff was not self-managing his disease, received blood tests from CTF medical staff, and thus did not need an-person glucometer. ECF No. 238-7 ¶ 29; *see also* ECF No. 238-1 ¶ 14 (Dr. Ahmed's declaration characterizing on-person glucometer as a "convenience" that was not medically necessary). Defendants also contend that on-person glucometers may be unreliable. Mot at. 16; ECF No. 238-7 ¶ 30 ("[F]ingerstick blood-glucose monitoring can be inaccurate, particularly with an uncalibrated meter or when a patient has residual carbohydrate on the finger they stick for the blood.").

Plaintiff does not dispute that he had access to other blood tests, but responds that there are material issues of fact related to the medical necessity of an on-person glucometer for a brittle Type 1 diabetic. Opp. at 16. Specifically, he contends that plaintiff needed to check his blood sugar levels "much more frequently than three or four times per day, which is what the prison provide[d]." *Id.* Plaintiff's expert Dr. Koliwad attested that continuous self-tracking represents "the trend in management of this condition" and is "highly beneficial," but did not claim that an on-person glucometer was medically necessary. ECF No. 241-47 ¶¶ 73–75. Likewise, Dr. Kumar, the external endocrinologist who visited plaintiff at CTF, advised that plaintiff receive an

34

Case No. 15-CV-01769-LHK
ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

on-person glucometer, ECF No. 241-28, 241-29, but never wrote that one was required, and later attested that "an on-person glucometer is not medically necessary." ECF No. 238-9 ¶ 5. Thus, plaintiff has not claimed that defendants' decision was "medically unacceptable under the circumstances." *Toguchi*, 391 F.3d at 1058 (internal citation omitted).

Plaintiff also contends, relying again on *Colwell*, that the prison denied plaintiff's glucometer request because the request conflicted with prison policy rather than for medical reasons. Opp. at 16. However, the critical problem in *Colwell* was that the prison's enforcement of its "one good eye" policy ignored the plaintiff's medical need. *See* 763 F.3d at 1069 (reversing grant of summary judgment because record supported inference that prison "disregarded the[] recommendations" of specialists in favor of an administrative policy). By contrast, defendants in this case have offered evidence that their "no glucometer" policy was motivated by legitimate medical concerns. Plaintiff has not identified contrary evidence raising a material dispute.

Accordingly, the Court GRANTS defendants' motion for summary judgment on Count 5.

### d. Count 7

In Count 7, plaintiff alleges that Officer Orozco prevented plaintiff from eating after plaintiff had received an insulin injection. ECF No. 31-1 at 6, 8. On July 14, 2013, Officer Orozco confined plaintiff to his cell during medication distribution and later forgot to release him, which caused plaintiff to miss his regular meal time. *Id.*; ECF No. 238-11 ¶¶ 6-7. Defendants contend there is no evidence to support this claim. Mot. at 14. In opposition, plaintiff contends that his and Officer Orozco's conflicting accounts of the incident preclude summary judgment. Opp. at 18. However, while plaintiff identifies factual disputes in the record, plaintiff raises no factual dispute about Officer Orozco's state of mind. Evidence of negligence is not sufficient to prove an Eighth Amendment deliberate indifference claim. *See McGuckin*, 974 F.2d at 1059. Instead, "a defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." *Id.* at 1060. In his declaration in support of summary judgment, Officer Orozco

35

acknowledged locking plaintiff in his cell, but asserted that it was a mistake not to release plaintiff once medication distribution concluded. ECF No. 238-11 ¶ 7. In a grievance, plaintiff complained Officer Orozco intentionally locked him in the cell during medication distribution, *see* ECF No. 241-35 at 3, but plaintiff does not point to evidence that Officer Orozco's failure to *release* plaintiff was intentional or any other record evidence that would raise the inference that Officer Orozco was deliberately indifferent. Thus, plaintiff has not raised a genuine dispute of material fact.

Accordingly, the Court GRANTS defendants' motion for summary judgment on Count 7.

### e. Count 8

In Count 8, plaintiff alleges that on November 4, 2013, Officer Lopez prevented plaintiff from eating after plaintiff had received an insulin shot, and was thus deliberately indifferent to plaintiff's serious medical needs. ECF No. 31-1 at 10–12. Defendants contend that Count 8 is not supported by any evidence and that alternatively, there is no evidence that plaintiff suffered harm. Mot. at 14. In response, plaintiff points to evidence that Officer Lopez refused to release plaintiff for a scheduled meal after plaintiff explained that he needed to eat following his insulin injection. Opp. at 19. According to plaintiff, Officer Lopez placed plaintiff in his cell during a security issue. ECF No. 241-9 at 6. Plaintiff had just taken his insulin, and informed Officer Lopez that once the security issue was clear, he needed to eat. *Id.* However, Officer Lopez "laughed and smiled" and told plaintiff to "eat crackers." *Id.* Later, while the rest of the inmates ate, plaintiff remained "in a locked cell." *Id.* Officer Lopez denies that the incident occurred, but when the parties offer conflicting evidence on summary judgment, the party assumes the truth of the non-moving party's evidence. *See Grupo ICA*, 198 F.3d at 1158. If plaintiff's account is true, and plaintiff informed Officer Lopez of the urgency of his need to eat after an insulin shot, Officer Lopez was aware of plaintiff's serious medical need and failed to act. Plaintiff thus has raised a genuine dispute of material fact. *See Lolli*, 351 F.3d at 421 (reversing grant of summary judgment

36

where plaintiff told officers "of his deteriorating condition and ask[ed] for food").

Defendants' other argument, that plaintiff was not harmed, is immaterial to the question of an Eighth Amendment violation. It is enough to prove deliberate indifference that defendants "disregard[ed] an excessive risk to inmate health and safety." *Colwell*, 763 F.3d at 1066 (internal citations omitted); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) ("A prisoner need not show his harm was substantial[.]"). Plaintiff contends that missing a meal could have induced hypoglycemia. Opp. at 19. Indeed, plaintiff's expert Dr. Koliwad attested that "[r]eceiving insulin and then being forced to skip a meal would result in hypoglycemia." ECF No. 241-47 ¶ 72. Defendants' expert also acknowledged the importance of pre-meal insulin and the seriousness of hypoglycemia. ECF No. 238-7 ¶¶ 22–23, 25. Thus, plaintiff has raised a genuine dispute of material fact as to whether Officer Lopez's conduct exposed plaintiff to excessive risk.

Accordingly, the Court DENIES defendants' motion for summary judgment on Count 8.

### f. Count 9

In Count 9, plaintiff alleges that Officer Lopez violated the Eighth Amendment by denying plaintiff entry to his building at lunchtime. ECF No. 31-1 at 14–17. Defendants appear to contend that summary judgment is warranted because plaintiff was not authorized to enter the building, and because plaintiff did not suffer harm. Mot. at 15. According to plaintiff, he returned from an appointment that ran long, received his insulin, and attempted to enter Lassen Hall. ECF No. 241-37 at 2. Officer Lopez said that plaintiff could not enter Lassen Hall until the next release time, which was over two hours later. *Id.* When plaintiff protested that he needed food, Officer Lopez examined plaintiff's pockets, found a snack, and said "that's good enough." *Id.* According to Officer Lopez, she permitted all inmates returning from the yard to enter Lassen Hall between 11:45 and noon, ECF No. 197-4 at 17, and she did not deny plaintiff entry. ECF No. 241-31 at 66:7.

To support their motion, defendants point to documentation that after a review, the prison

37

concluded that plaintiff "was unable to substantiate that he was authorized to enter the building at the time in question." ECF No. 197-4 at 21. Also, plaintiff does not identify evidence that Officer Lopez was aware of a serious medical need. Plaintiff informed Officer Lopez that he needed lunch, and she advised him to have a snack, but there is no evidence in the record that plaintiff otherwise informed Officer Lopez of his need. *See Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (concluding that custody officers were subjectively aware of plaintiffs' serious medical needs due to plaintiffs' "repeated requests for attention" and "numerous instances" of prior harm). Plaintiff's assertion that he needed lunch is not enough to raise a genuine dispute of material fact as to whether Officer Lopez was aware of a serious medical need.

Accordingly, the Court GRANTS defendants' motion for summary judgment on Count 9.

**g. Counts 11–13**

Plaintiff's allegations in Counts 11–13 all stem from the defendants' denial of bedtime insulin and bedtime blood sugar tests in April 2015.[2] Count 11 stems from the defendants' denial of bedtime insulin, Count 12 stems from defendants' denial of a bedtime blood sugar test, and Count 13 alleges that the denial of bedtime insulin forced plaintiff not to eat full meals. *See* Opp. at 21–22. Accordingly, as with defendants' arguments regarding exhaustion, the Court addresses defendants' motion on those Counts as a group. The undisputed facts relating to these Counts are as follows. Dr. Kumar had recommended providing plaintiff bedtime Regular insulin on a sliding scale. ECF No. 31 at 35 (plaintiff's medical visit notes stating "[s]een by endocrinologist, who adv HS blood sugar check and add RI if > 200 sliding . . ."). Dr. Bright explained that "HS" means a bedtime blood sugar check and "RI" means "Regular insulin." ECF No. 241-38, 32:24-33:2. The prison denied the request. As a result, according to plaintiff, he was unable to "eat full, nutritious meals [like] other inmates." *Id.* at 51. Plaintiff further explained that without a bedtime

---

[2] To the extent that plaintiff's amended complaint includes other factual allegations under Counts 11, 12, and 13, plaintiff now disclaims any reliance on those allegations. *See* Opp. at 21:7-9.

Case No. 15-CV-01769-LHK
ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

blood test, he lacked a "check to verify safety" for a span of 15 hours. ECF No. 241-41. When plaintiff appealed the denials, CCHCS explained that "specialist providing consultation for your care are not able to and has not issued orders" (sic), and that "[h]ealth care providers will continue to confer with you and each other to provide appropriate medical care." ECF No. 198, AGO 149.

Defendants contend that summary judgment is warranted because plaintiff had access to blood sugar monitoring and Dr. Bright's decision to deny bedtime insulin was medically appropriate. Mot. at 16–17. For example, Dr. Bright explained that he denied the request for bedtime fast-acting insulin because after receiving a dose, "the inmate may not have access to a meal to eat . . . and might be forced to fast during the entire night." ECF No. 238-4 ¶ 7. Likewise, defendants' expert Dr. Fitzgerald attested that "[t]he most dangerous time for hypoglycemia to occur is during sleep." ECF No. 238-7 ¶ 26. In response, plaintiff asserts that the prison's denial was medically unacceptable. Opp. at 21. Plaintiff's expert Dr. Koliwad suggested that Dr. Kumar's recommendation of a sliding scale dose of "bedtime insulin" was intended to "blunt" high blood sugars when plaintiff's levels were high. ECF No. 241-47 ¶ 70. Dr. Koliwad concluded that sliding scale bedtime insulin was "medically necessary." *Id.* Plaintiff, however, has not identified facts suggesting that defendants rejected plaintiff's request for bedtime insulin on any other basis than their medical judgment. Dr. Koliwad's conclusory statement that defendants' rejection was medically unacceptable does not itself create a genuine dispute of fact. *See Colwell*, 763 F.3d at 1068 ("A difference of opinion . . . between medical professionals [] concerning what medical care is appropriate does not amount to deliberate indifference.") (internal citation omitted).

Plaintiff offers no other evidence that bedtime Regular insulin was medically necessary. Moreover, Dr. Kumar—the very endocrinologist who recommended plaintiff receive bedtime insulin—attested in a declaration that he "ha[d] no criticisms concerning the medical care that Dr. Ahmed provided" plaintiff. ECF No. 238-9 ¶ 3. In light of that declaration, plaintiff has not

39

provided sufficient evidence to show that defendants' decision to deny bedtime Regular insulin was medically unacceptable. The Court's conclusion requires granting defendants' motion for summary judgment on Counts 11 and 13, which both pertain to the defendants' denial of sliding scale bedtime Regular insulin.

As to Count 12, plaintiff contends that if defendants chose not to provide bedtime insulin, at least a bedtime blood test was medically necessary so that plaintiff could check his glucose levels and "eat a snack to avoid suffering from hypoglycemia while locked in [his] cell all night." Opp. at 22. Plaintiff further contends that defendants did not always permit him a bedtime blood test. *Id.* Yet plaintiff had access to blood tests whenever he obtained an insulin injection. ECF No. 238-4 ¶ 7. To the extent plaintiff claims he lacked blood sugar monitoring, the record thus contradicts that claim. Elsewhere in his opposition brief, plaintiff does not dispute that he had access to blood sugar testing multiple times per day. *See* Opp. at 16. To the extent plaintiff claims a bedtime blood sugar test was medically necessary, he has not identified record evidence supporting that allegation. Plaintiff thus has not raised a factual material dispute for his claim for deliberate indifference as to Count 12. *See Toguchi*, 391 F.3d at 1058 (summary judgment is warranted unless plaintiff offers evidence to dispute whether defendants' decision was "medically unacceptable under the circumstances").

Accordingly, the Court GRANTS defendants' motion for summary judgment on Counts 11–13.

### E. Qualified Immunity

Having concluded that genuine disputes of material fact preclude summary judgment on deliberate indifference grounds on Counts 4 (against defendant Dr. Ahmed) and 8 (against defendant Officer Lopez), the Court next considers whether those defendants are entitled to qualified immunity.

Government officials are entitled to qualified immunity from suit if the officials did not

40

Case No. 15-CV-01769-LHK
ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS

"violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A right is clearly established if it was "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Although case law need not be directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam).

Defendants do not raise specific arguments as to qualified immunity on Count 4. Globally, defendants contend that "[a]s to each claim . . . it would not have been evident to a reasonable official, under the circumstances, that Defendants were deliberately indifferent to [plaintiff's] medical needs." Mot. at 24. On Count 8, defendants appear to argue that "it would not have been clear to a reasonable officer in . . . Lopez's position that . . . suggesting that such an inmate eat a snack, violated the inmate's rights." *Id.* However, in *Lolli*, which was decided more than a decade before the events involved in this case, the Ninth Circuit concluded that the "urgency of [plaintiff's] protestations about his diabetes and his need for food" put custody officers on notice of the inmate's risk of harm. 351 F.3d at 421. As plaintiff tells it, he informed Officer Lopez that he needed to eat after his insulin injection, but she just "laughed and smiled." *Lolli* is thus a close match for this case, if the facts are as plaintiff says. Accordingly, genuine disputes of material fact preclude a grant of qualified immunity on Count 8.

Although Defendant Dr. Ahmed does not raise any specific argument about qualified immunity on Count 4, the gravamen of defendants' argument is that because "[plaintiff] has, among other things, been seen regularly by licensed medical providers and received blood sugar testing and insulin in accordance with the judgment of his physicians," medical staff are entitled to qualified immunity. *See* Reply at 15. However, *Lolli* placed beyond dispute that "a constitutional violation may take place when the government does not respond to the legitimate medical needs of a detainee whom it has reason to believe is diabetic." 351 F.3d at 420. As explained above, there

41

is a genuine factual dispute whether, based on plaintiff's blood sugar levels, defendant Dr. Ahmed was subjectively aware of plaintiff's serious medical needs. That factual dispute also precludes a grant of qualified immunity.

## IV.      CONCLUSION

For the foregoing reasons, the Court GRANTS defendant Dr. Ahmed's motion for leave to file a second summary judgment motion, GRANTS plaintiff's motion for leave to file a late opposition to Dr. Ahmed's motion for leave, DENIES defendants' motion for judgment on the pleadings, GRANTS defendants' motion for summary judgment on Counts 1, 3, 5–7, 9, and 11–13, GRANTS defendants' Ellis and Warden Spearman's motion for summary judgment on Count 4, DENIES defendant Dr. Ahmed's motion for summary judgment on Count 4, and DENIES defendant Officer Lopez's motion for summary judgment on Count 8.

**IT IS SO ORDERED.**

Dated:  September 18, 2018

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 15-CV-01769-LHK
ORDER GRANTING DEFENDANT AHMED'S MOTION FOR LEAVE TO FILE A SECOND SUMMARY
JUDGMENT MOTION; GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE A LATE OPPOSITION TO
DEFENDANT AHMED'S MOTION FOR LEAVE; GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS